[Civ. No. 62227. Second Dist., Div. Two. Nov. 17, 1981.]

JOSEPH M. GIRARD, Plaintiff and Appellant, v.
STEPHEN L. BALL, Defendant and Respondent.

COUNSEL

Robert J. Grossman and Grossman & Weissman for Plaintiff and Appellant.

Ross E. Atkinson, Allan Jacobs and Waite & Jacobs for Defendant and Respondent.

OPINION

**OLSON, J.***—Appellant appeals from a judgment dismissing his complaint and entering judgment for the respondent after the trial court granted a motion for summary judgment.

ISSUE PRESENTED ON APPEAL:

Were there any triable issues of material facts presented by the pleadings, the declarations, including interrogatories and answers thereto filed in support of the motion for summary judgment? We conclude there were none, and that the motion was properly granted.

---

*Assigned by the Chairperson of the Judicial Council.

FACTUAL BACKGROUND:

As developed from the declarations of appellant and respondent, and the answers of appellant to extensive written interrogatories propounded to him by respondent before the motion for summary judgment, the following facts are relevant to this appeal:

Appellant is an attorney at law, merchant banker, and general contractor and real estate developer. He was constructing a residence at 11811 Santa Paula Road in Ojai, California. In response to interrogatories, appellant stated that he has owned and developed so much real estate and has had so much experience supplying temporary power to building sites prior to this action that he was unable to itemize it, because there was "too great a quantity over too great a time."

Appellant employed John C. Wilbur as his construction supervisor. Needing temporary electric power for the construction project, Wilbur arranged with respondent Steven L. Ball, dba Ojai Electric, a licensed electrical contractor, to supply and install certain material and equipment.

On or about May 18, 1979, respondent entered into a written contract for the material and equipment with appellant's agent Wilbur, calling for an initial rental fee of $600. Respondent and Wilbur orally agreed that use of the materials and equipment (essentially temporary power poles), supplied and installed by respondent in excess of the initial 90-day period covered by the written contract would result in a rental fee.

Respondent installed and supplied all materials and equipment called for by the contract. The materials and equipment supplied functioned as intended, satisfied their intended purpose, and performed to the satisfaction of appellant's job supervisor.

Appellant continued to use the materials and equipment after the initial 90-day period. Respondent assessed the agreed monthly rental fee of $46 per month for each of seven months appellant used the materials and equipment. These charges were not paid as billed and additional "service" or "carrying" charges in the total sum of $43.66 were assessed.

Respondent made regular monthly billings. Appellant paid the initial $600 fee (albeit over 60 days after it was due under the written agree-

ment), but failed to pay the 7 monthly charges and failed to pay the carrying charges. Respondent's bookkeeper made telephone calls requesting payment but payment was not made. By a memo dated March 13, 1979, mailed by respondent to appellant, respondent stated: "Our records show that you have made no effort to pay for power pole rentals since last August. If payment on this account is not received by the 30th of this month, all pole lines and equipment will be removed on that date."

Following that memo, appellant telephoned a message to the effect that the power poles should be removed. Respondent then arranged to have them removed from appellant's property.

On April 24, 1979, after removal of the power poles, respondent wrote to appellant as follows: "Dear Sir: Unless this bill is satisfied in full on or before May 8th, 1979 we will be forced to file this document with the small claims court of Ventura County and proceed with collection. Your job superintendent will be called as witness as will Mr. Lawson, who was present at time of contract and rental agreement signing. Regretfully, Steven L. Ball" Enclosed with the memo was a statement of claim on the printed form employed in the Small Claims Court of Ventura County indicating a proposed action by Steven L. Ball dba Ojai Electric against Joseph M. Girard claiming $365.66 with a statement of the nature of the claim set forth as follows: "Unpaid balance of electric pole rental due to use of equipment beyond specified period of noncharged use."

On May 7, 1979, after appellant had received the memorandum of April 24, 1979, he filed a complaint in the Los Angeles Superior Court alleging causes of action for (1) fraud and deceit based upon intentional misrepresentation, (2) intentional infliction of emotional distress, (3) trespass and injury to real property and seeking damages in excess of $750,000.

After first attempting to obtain a stipulation for transfer of this action to Ventura County, which was summarily refused, respondent made a motion for change of venue. The motion was based on the grounds that the defendant was a resident of Ventura County, the real property which was the subject of the third cause of action was located in Ventura County and lastly, on the ground that the contract to be performed was entered into and was to be performed in Ventura County. The motion was expectedly granted.

Respondent thereafter filed an answer to the $750,000 complaint and a cross-complaint for the $365.66 which had been the subject of the April 24, 1979, letter.

Respondent initiated discovery through interrogatories. Appellant did not conduct discovery. Following discovery, respondent filed a notice of motion and motion for summary judgment on all three causes of action of appellant's complaint, supported by declarations of respondent and appellant's agent John Wilbur, and by the interrogatories and answers thereto of appellant. Appellant opposed the motion and filed his declaration in opposition. Following a hearing, respondent's motion was granted as to all three causes of action, judgment was entered against appellant and appellant has appealed.

APPELLANT'S CONTENTIONS:

1. Granting summary judgment was erroneous because the declarations in support of the motion for summary judgment are not sufficient to support a judgment in favor of the moving party.

2. Granting summary judgment was erroneous because appellant has presented facts which give rise to a triable issue.

DISCUSSION:

Before discussing appellant's substantive contentions on this appeal, it should be noted that appellant's opening brief at pages 8 and 9 contain an accusation that the trial judge was unduly prejudiced against appellant. The statements in the brief are totally unsupported by the record. The record before us consists of the clerk's transcript. For counsel to purport to quote the trial court's statements at the time of the argument on the motion is totally improper. It is a violation of California Rules of Court, rule 13. As was stated in *Lady* v. *Barrett* (1941) 43 Cal.App.2d 685, 686-687 [111 P.2d 702]: "That the respondent, however, had little confidence that this action directing a verdict was warranted on the evidence then before the court, appears from the fact that he has felt called upon to state in his brief, as proven facts, circumstances of which the court below was not advised, according to the record, and incidents which were not brought out in evidence. This, of course, is reprehensible practice on the part of counsel, and in our consideration of the appeal we have disregarded these statements, covering six or seven pages of re-

spondent's brief." (See also, *Ivens v. Simon* (1963) 212 Cal.App.2d 177, 183 [27 Cal.Rptr. 801].)

As stated above, the ruling of the trial court was correct and we affirm. This case involves a classic example of the appropriate use of the summary judgment procedure. It establishes that appellant does not possess evidence in support of his allegations in the complaint that demand or even justify the analysis of the trial.

The motion in question was made pursuant to the authority set forth in Code of Civil Procedure section 437c.

■ As was stated in *Leasman v. Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376, 380 [121 Cal.Rptr. 768]:

"The purpose of the summary judgment procedure is to discover, through the media of affidavits, whether the parties possess evidence which demands the analysis of trial. [Citations.] 'A summary judgment will stand if the supporting affidavits state facts sufficient to sustain a judgment and the counteraffidavits do not proffer competent and sufficient evidence to present a triable issue of fact.' [Citations.]"

This case also affords an opportunity to consider the liberalizing effect of the 1973 changes in Code of Civil Procedure section 437c. Although some ten changes were made when the Legislature rewrote Code of Civil Procedure section 437c in 1973, four changes are particularly important in this appeal. (See for a discussion of all of the changes 4 Witkin, Cal. Procedure (1981 pocket supp.) Proceedings Without Trial, § 173A, pp. 53-54.)

First, the use of discovery materials is expressly recognized.

Second, inferences must be considered.

Third, credibility as a ground of denial has been greatly restricted.

Fourth, the discretion to deny a motion when properly supported, was eliminated.

Under the 1973 revision of Code of Civil Procedure section 437c, the motion "... *shall* be granted if all the papers submitted show that

there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The discretion to deny the motion, which existed before 1973 (although even such discretion was reduced by appellate decisions mandating the granting of motions when it was shown that there were no disputed facts) was eliminated. (See 4 Witkin, Cal. Procedure (1981 pocket supp.) Proceedings Without Trial, § 196A, pp. 62-63.)

As discussed in Witkin, (*Op. cit. supra*, at p. 63), there was uncertainty under the former statute as to the power to order summary judgment when inferences must be drawn. As amended in 1980, in conformity with the requirement that inadmissible evidence be objected to, section 437c provides: "In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact."

Appellant's answers to the interrogatories should be given special consideration by the court. The court strictly construes the moving party's proffered evidence, and liberally construes the opposing party's evidence. (*Gray* v. *Reeves* (1977) 76 Cal.App.3d 567, 573 [142 Cal. Rptr. 716].) However, this rule is subject to the modification discussed in *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 21 [112 Cal.Rptr. 786, 520 P.2d 10], indicating that an admission or the testimony of an opposing party made during discovery is entitled to great weight.

This rule was discussed in *Leasman* v. *Beech Aircraft Corp., supra*, 48 Cal.App.3d 376, at page 382, as follows:

"Under the rule that the affidavits of the party opposing a motion for summary judgment are liberally construed [citations] it appears that plaintiff has presented sufficient competent evidence to present a triable issue of fact with respect to whether she sustained a physical injury in the subject incident. However, in view of plaintiff's admissions in her deposition and answers to interrogatories that she had suffered no phys-

ical injury as a result of the incident, the rule of liberal construction loses its efficacy and the granting or denial of the motion for summary judgment depends upon the issues of credibility. Accordingly, when a defendant can establish his defense with the plaintiff's admissions sufficient to pass the strict construction test imposed on the moving party [citations], the credibility of the admissions are valued so highly that the controverting affidavits may be disregarded as irrelevant, inadmissible or evasive [citations].

"In *D'Amico* we find the following pertinent statements: 'Moreover, when discovery has produced an admission or concession on the part of the party opposing summary judgment which demonstrates that there is no factual issue to be tried, certain of those stern requirements [i.e., strict construction of affidavits against moving party and liberal construction of counteraffidavits] applicable in a normal case are relaxed or altered in their operation . . .' (At p. 21.) 'The reasons for this attitude toward the legitimate products of discovery are clear. As the law recognizes in other contexts (see Evid. Code, §§ 1220-1230) admissions against interest have a very high credibility value. This is especially true when, as in this case, the admission is obtained not in the normal course of human activities and affairs but in the context of an established pretrial procedure whose purpose is to elicit facts. Accordingly, when such an admission becomes relevant to the determination, on motion for summary judgment, of whether or not there exist triable issues of fact (as opposed to legal issues) between the parties, it is entitled to and should receive a kind of deference not normally accorded evidentiary allegations in affidavits. [Citations.]'

"In *King*, an action for false arrest and assault, the plaintiff had stated in a prior deposition that no force was used. On a motion for summary judgment the deposition was utilized in support of the judgment. In his counteraffidavit the plaintiff stated that unnecessary force was used. The reviewing court upheld the granting of a summary judgment in favor of the defendants and the trial court's refusal to find that a triable issue was presented. (At p. 610.) The appellate court said: '. . . we are forced to conclude there is no *substantial* evidence of the existence of a triable issue of fact.' In reaching this conclusion the court observed that the clear and unequivocal admissions by the plaintiff in his deposition constituted 'sworn evidentiary facts which plaintiff could not possibly withdraw without committing the grossest perjury.' (At p. 610.)

"Similarly, in *Newport*, the plaintiff made admissions against interest in interrogatories and requests for admissions submitted by the defendant. The admissions were presented in support of a motion for summary judgment. The plaintiff, in his counteraffidavit, attempted to explain away his admission by contravening the underlying basis for his admissions. A summary judgment was upheld on the basis that the admissions effectively foreclosed the plaintiff's cause of action. (At pp. 236-237.)"

Having reviewed the legal principles applicable to this appeal, we now review the factual material before the trial court on the motion for summary judgment. The appellant's first cause of action alleges damages and punitive damages for fraud and deceit, based on his allegation that respondent entered into the contract with the secret intention not to perform. This cause of action is based on California Civil Code section 1710, subdivision 4. ■ According to 4 Witkin, Summary of California Law (8th ed. 1974) Torts, section 446, page 2711, the elements of fraud which give rise to an action for deceit are:

(1) misrepresentation;

(2) knowledge of falsity;

(3) intent to defraud, i.e., induced reliance;

(4) justifiable reliance; and

(5) resulting damage.

See *Seeger* v. *Odell* (1941) 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291]. If any one of these elements is lacking, the cause of action fails and the judgment must be affirmed.

We therefore review the evidence with respect to the elements of the cause of action:

■ Was there a misrepresentation? Appellant's agent and respondent agreed and continue to agree on the terms of their oral and written agreements which provided for the initial period of use and the rental fees for use after the initial period. Respondent performed according to the terms of these agreements. Since the persons who entered into the agreements concur on their terms and there was actual performance of

the agreements, there cannot be any misrepresentation. No credible evidence contrary thereto was presented by the appellant's declaration.

Was there knowledge of the falsity? Since there was no misrepresentation there could be no falsity on the respondent's part.

Was there an intent to defraud? Respondent performed his contract. Appellant's agent concedes this fact. The subsequent performance by respondent is evidence of his prior intention to perform. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 455, pp. 2718-2719; *cf. Jarkieh* v. *Badagliacco* (1946) 75 Cal.App.2d 505, 509 [156 P.2d 969].) Respondent also declared his intention to perform the contract at the time it was made. Appellant argues that this part of the declaration should be disregarded as conclusionary. Code of Civil Procedure section 437c would have permitted the trial court in the exercise of its discretion to deny the motion where a material fact is an individual's state of mind and such fact is sought to be established solely by the individual's affirmation thereof. However, there has been no showing by appellant of an abuse of discretion, and on our review of the record none could be shown. Secondly, a subsequent performance by respondent is probative evidence of his prior intention to perform.

The required element of justifiable reliance is lacking. Appellant's agent Wilbur took part in the arrangements with respondent and had full knowledge of them. His knowledge is imputed to his principal, the appellant here. (1 Witkin, Summary of Cal. Law (8th ed. 1974) Agency and Employment, § 139, page 743-744; *Columbia Pictures Corp.* v. *DeToth* (1948) 87 Cal.App.2d 622, 630 [197 P.2d 580].) Therefore, there is no way that appellant can show justifiable reliance on any misrepresentation allegedly made by respondent.

Lastly, because respondent performed the obligations imposed on him by the written and oral agreement, there is no proof of damage. He installed the temporary power lines to appellant's satisfaction. He permitted them to stay in use after the initial period until removal was requested by appellant. Appellant received the benefits of the agreement made by his agent.

In summary, no triable issue on the first cause of action existed.

Some discussion of appellant's position with respect to his agent Wilbur is appropriate. Appellant presented not a scintilla of evidence to

challenge the conclusion that John C. Wilbur was his construction superintendent and his agent. Yet in appellant's brief, Wilbur's authority is vaguely questioned, without support. From the entire context of the moving and opposition papers, and the inferences flowing therefrom, the declaration of Wilbur is entitled to significant weight. Appellant has pointed to no fact nor law that would limit his agent's general authority to bind him. He was clearly acting within the scope of his employment.

■ Appellant challenges the evidence to the effect that respondent and Wilbur entered into the oral rental agreement that resulted in the extra charges, basing his argument on the printed provisions in the written contract to the effect that "all agreements must be made in writing." This argument ignores commonly known custom and practice in the construction industry where oral agreements frequently modify or extend written agreements. More importantly, it misses the point. The oral agreement was a second agreement that followed the first written agreement which was fully performed. There is nothing unusual or sinister in the fact they were entered into contemporaneously. In the opposition to the motion for summary judgment appellant argued that the evidence of the oral agreement was an illegal attempt to vary a written agreement by parol evidence. Although the trial court was not assisted by the formal objections to the introduction of evidence contemplated by the 1980 amendment to Code of Civil Procedure section 437c, the arguments in appellant's opposition papers before the trial court will be treated by us as an objection to the introduction of parol evidence. That objection was not well taken and had it been made in a formal way, the trial court should have overruled it.

First, as noted above, the proffered evidence does not seek to alter the written agreement but rather to create a new agreement at the termination of the written agreement. Secondly, a careful review of the writing would justify the introduction of parol evidence to explain the terms thereof. The printed provision that both parties agree established an original 90-day period for the use of the equipment is susceptible to a different and a much more likely interpretation. It provides "This proposal shall be binding upon the contractor for a period not to exceed—days, unless earlier revoked by written notice of revocation prior to acceptance, at which time this proposal shall terminate automatically. No contractual rights arise until this proposal is accepted in writing."

Anyone examining the printed "proposal and contract" and reading that last quoted paragraph would understand that it relates to the pro-

posal or "bid" being made by a contractor. In making the bid, the party is given an opportunity to indicate a number of days during which the bid may be accepted. This gives the recipient of the bid a fixed period of time during which he can consider the proposal, consider other bids and know that he is entitled to make an acceptance within the time stated. In this instance both parties apparently used the printed provision to accomplish another means, to wit, the establishment of an initial 90-day period for the installation by respondent and the use by plaintiff of the poles, wiring, metering and distribution panel, necessary to provide temporary power at the jobsite. Clearly the document needs parol evidence to understand its meaning. We find it sufficiently ambiguous as a matter of law to justify the receipt of parol evidence.

■ We now turn to a similar analysis of appellant's second cause of action alleging intentional infliction of emotional distress. ■ The essential elements of intentional infliction of emotional distress are:

(1) outrageous conduct;

(2) intention of causing, or reckless disregard of the probability of causing emotional distress;

(3) severe or extreme emotional distress; and

(4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

It must also appear that the defendant's conduct was unprivileged. (*Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 394 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].)

■ An analysis of the second cause of action indicates that it is based on the alleged fraud referred to in the first cause of action, and respondent's actions in attempting to collect the money he claimed was owed to him.

Since we have concluded that there was no fraud as alleged in the first cause of action, the only further basis for recovery by appellant on the second cause of action would be respondent's conduct in attempting to enforce his rights under the agreement.

An action for intentional infliction of emotional distress exists only where the defendant's conduct was not privileged. (*State Rubbish Etc.*

*Assn.* v. *Siliznoff* (1952) 38 Cal.2d 330, 336-339 [240 P.2d 282]; *Fletcher* v. *Western National Life Ins. Co.* (1970), *supra*, 10 Cal.App. 3d 376, at 395; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts § 233, p. 2514.) The assertion of an economic interest in good faith is privileged. (*Fletcher* v. *Western National Life Ins. Co., supra*, 10 Cal. App.3d 376, at 396.) We have concluded that the evidence establishes that there was an oral agreement providing for the rental fee, and good faith is clearly shown by the declarations of respondent and Wilbur.

The privilege can be vitiated by outrageous conduct (*Deaile* v. *General Telephone Co., of California* (1974) 40 Cal.App.3d 841, 849 [115 Cal.Rptr. 582]), but respondent's conduct was not outrageous nor extreme. Mailing of the two written communications previously referred to and the making of some telephone requests for payment as occurred in this case do not even hint at the kind of conduct referred to in the cases discussing outrageous conduct. For instance, respondent did not call appellant's neighbor at 11 p.m., requesting that the neighbor summon the appellant for an emergency telephone call and advise the appellant to prepare for a terrible shock and then demand payment of a bill which did not in fact exist, such as was done in *Bowden* v. *Spiegel, Inc.* (1950) 96 Cal.App.2d 793, 794-795 [216 P.2d 571]. Appellant claims only that he "received a number of telephone calls from a person who identified herself as Ball's bookkeeper" and that "all of these telephone calls were demands for payment of additional rental charges." Appellant does not declare that the telephone calls came at odd hours, or in such a manner or number as to be harrassing, or that the person making the calls was abusive. (See also, *Alcorn* v. *Anbro Engineering, Inc.* (1970) 2 Cal.3d 493 [86 Cal.Rptr. 88, 468 P.2d 216].) There is no evidence that respondent intended to inflict emotional distress nor any evidence from which such an intent could be inferred. The manner in which the collection activity was conducted was consistent with common business practices.

In order for appellant to recover for intentional infliction of emotional distress, he must have suffered severe or extreme emotional distress. The trial court properly considered whether any triable issue of fact existed in this and other regards. The evidence presented by appellant does not arise to any triable issue.

As was stated in *Fletcher* v. *Western National Life Ins. Co.* (1970), *supra*, 10 Cal.App.3d 376, at page 397 ". . . 'severe' means substantial or enduring as distinguished from trivial or transitory. ▮ Severe

emotional distress means, then, emotional distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it."

■ Appellant responded in answers to interrogatories that he suffered as follows: "couldn't sleep—anxiety symptoms—nervous." He sought no medical treatment for his condition. In his opposition declaration, filed some four months later, after the motion for summary judgment had been made, appellant then claimed more extensive symptoms. In view of the great weight to be given appellant's earlier answers to interrogatories, as discussed at the outset of this opinion, it cannot be said that his later declaration raises triable issues. It is not believable. The suggestion that appellant, an attorney, banker, builder, investor and businessman, suffered extreme emotional distress from respondent's two letters and some phone calls requesting payment is absurd and does not present a triable issue of fact.

■ Having concluded that no triable issues of fact were present as to the first and second causes of action, we now look to the third cause of action alleging trespass. ■ Trespass is an unlawful interference with possession of property. (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 350, p. 2611.) Peaceable entry on land by consent is not actionable. (*Id.* at § 351, p. 2612.) ■ Appellant admitted that respondent's entry onto his land to recover possession of the respondent's property was with his consent. An interrogatory asked whether permission for the alleged entry was given by appellant and appellant responded "yes." Appellant concedes that he intended that respondent reenter his land and take possession of the materials and equipment installed by respondent and that neither he, his agents nor employees took any action to prevent respondent's entry, nor demanded that they leave once entry occurred. Thus, the entry on the land was not an interference with appellant's right and no triable issue existed. It is alleged that respondent damaged appellant's property by leaving large deep holes in it. Respondent concedes that the holes existed but claims that he had no responsibility to fill them. Appellant's agent, Wilbur, states that respondent did not dig the holes and never promised that he would fill them. Appellant's own agents dug the holes and bore the responsibility for filling them. In answer to interrogatories, appellant admits that his agents dug the holes. In appellant's opposition declaration it is claimed that some bricks were broken by respondent's employees. The complaint was very specific in alleging that the only damage to property was the holes left from removal of the poles, valued at $100. There is no allegation re-

garding any other damage. Respondent conducted appropriate discovery based on the allegations of the complaint. Appellant's late claim in the declaration in opposition concerning some broken bricks does not rise to a triable issue of fact.

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.