[No. B047670. Second Dist., Div. Seven. Dec. 4, 1990.]

FRAN SYMONDS, Plaintiff and Appellant, v.
MERCURY SAVINGS AND LOAN ASSOCIATION et al.,
Defendants and Respondents.

**COUNSEL**

Olga Fabrick and Robert L. Kern for Plaintiff and Appellant.

Suchman, Galfin & Passon, Kenneth D. Passon and Scott I. Richards for Defendants and Respondents.

## OPINION

**JOHNSON, J.**—Plaintiff Fran Symonds appeals from the order of dismissal in her action against defendants Mercury Savings and Loan Association (Mercury) and Debra Winthrop. We conclude the trial court erred in sustaining the defendants' demurrer in its entirety and reverse.

### STATEMENT OF FACTS AND PROCEEDINGS BELOW

In accord with the governing standard of review, the factual allegations contained in appellant's complaint are deemed admitted by defendants' demurrer. (*White* v. *Davis* (1975) 13 Cal.3d 757, 765 [533 P.2d 222]; *Maheu* v. *CBS, Inc.* (1988) 201 Cal.App.3d 662, 669-670 [247 Cal.Rptr. 304].) Appellant's complaint alleges the following facts.

On November 28, 1988, appellant deposited a check drawn on the account of Karen Nyeholt payable in the sum of $5,316.83 into her Mercury account. At that time, Nyeholt's account contained sufficient funds to cover the check and continued to have such funds for another 44 days.

Mercury failed to properly process and present the check although it informed appellant the check was collected. On July 24, 1989, almost eight months after the initial deposit in appellant's account, Mercury learned there were insufficient funds to cover the amount of the check. Mercury informed appellant of the insufficient funds on July 25 and the next day placed three of appellant's accounts on hold.

On July 28, Mercury refused to honor a check drawn on one of appellant's accounts and payable to her local market because of the hold placed on appellant's funds. Mercury informed appellant it would continue to dishonor checks unless appellant signed a promissory note for the amount previously credited to her for the Nyeholt check. Because of the dishonor, appellant is no longer permitted to cash checks at her market. Further, because of the freeze on her accounts, appellant has been required to obtain loans at high interest rates to meet her daily expenses.

Defendant Debra Winthrop, Mercury's branch manager, has repeatedly called appellant warning appellant Mercury would attach all of appellant's accounts unless appellant signed the promissory note. Appellant hired an attorney who instructed defendant Winthrop to direct all further communications to the attorney. Nonetheless, Winthrop continued to call appellant every day until this action was filed. As a consequence of this conduct appellant suffered emotional distress.

On August 15, 1989, appellant filed this action against Mercury, Winthrop and the drawer of the check, Karen Nyeholt. Appellant's complaint set forth actions for (1) conversion, (2) negligence, (3) breach of a quasi-fiduciary duty and wrongful dishonor, (4) negligent infliction of emotional distress, (5) intentional infliction of emotional distress, (6) failure to follow statutory procedures for imposing a banker's lien, and (7) harassment.

Respondents Mercury and Winthrop demurred arguing, inter alia, Mercury had an unconditional right to charge back the amount provisionally credited to appellant since there had been no final settlement of the check. The trial court sustained the demurrer without leave to amend and appellant appealed.

## DISCUSSION

### I. STANDARD OF REVIEW.

■ The standard of review for a judgment following the sustaining of a demurrer without leave to amend is well settled. We treat the demurrer as admitting all of the material facts properly plead and draw all reasonable inferences therefrom. (*Maheu v. CBS, Inc., supra,* 201 Cal.App.3d 662, 669-670.) If the plaintiff has stated a cause of action under any cognizable legal theory, the judgment must be reversed. (*Id.* at p. 670; *Von Batsch v. American Dist. Telegraph Co.* (1985) 175 Cal.App.3d 1111, 1117 [222 Cal.Rptr. 239].)

Since we review the trial court's action, and not its reasons therefor, we examine each cause of action to determine whether there are other grounds for sustaining the demurrer *without leave to amend.* ■ "Ordinarily it is an abuse of discretion to sustain a general demurrer to a complaint without leave to amend if there is a reasonable possibility that the defect in the complaint can be cured by amendment. [Citations.] However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion. [Citations.] Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. [Citation.]" (*Profile Structures, Inc. v. Long Beach Bldg. Material Co.* (1986) 181 Cal.App.3d 437, 444 [226 Cal.Rptr. 192], internal quotation marks omitted; *Maheu v. CBS, Inc., supra,* 201 Cal.App.3d at p. 670.)

### II. APPELLANT HAS A STATUTORY RIGHT TO PROCEED AGAINST MERCURY FOR DAMAGES RESULTING IN THE NEGLIGENT HANDLING OF THE CHECK.

Appellant's causes of action arose out of two separate acts. The first involves the charge back of appellant's account, and the second involves the

alleged harassment by respondents to collect the amount of the charge back. This section considers the causes of action derived from the bank's "charge back" while section III considers the harassment counts.

As to those causes of action predicated upon Mercury's charge back, i.e., conversion, negligence, breach of quasi-fiduciary duty, wrongful dishonor and negligent infliction of emotional distress, appellant's rights are expressly set forth and limited by statute.[1]

To understand the relationship between the various statutes, a brief overview of the bank collection practice is required. When a customer deposits a check drawn on another bank, the customer receives a provisional credit for the amount of the check. (Cal. U. Com. Code, § 4201; *Lawrence* v. *Bank of America* (1985) 163 Cal.App.3d 431, 435 [209 Cal.Rptr. 541].)[2] The collecting bank, acting as the customer's agent, then forwards the check to the payor bank or a presenting bank which gives the collecting bank a provisional credit. (See *Cooper* v. *Union Bank* (1973) 9 Cal.3d 371, 378 [107 Cal.Rptr. 1 [507 P.2d 609].) If the check is forwarded to a presenting bank, the presenting bank in turn presents the check to the payor bank from which the check is to be drawn and receives a provisional credit. If the payor bank does not promptly dishonor the check, the provisional settlements throughout this chain of banks become final. (§ 4213, subd. (1) and (3); see generally, 5 Hawkland & Lawrence, Uniform Commercial Code Series (1984) Bank Deposits and Collections, § 4-212:01, p. 503.)

In handling the check, the collecting bank must use ordinary care in presenting the check for collection or for sending it for presentment. (§ 4202, subd. (1)(a); *Fireman's Fund Ins. Co.* v. *Security Pacific Nat. Bank* (1978) 85 Cal.App.3d 797, 820 [149 Cal.Rptr. 883]; see *Frontier Refining Co.* v. *Home Bank* (1969) 272 Cal.App.2d 630, 636 [77 Cal.Rptr. 641].) If the bank uses ordinary care, it may not be held liable for the negligence, misconduct, mistake or default of another bank or person which results in the loss, destruction or inability to obtain repossession of the check in transit or in the possession of others. (§ 4202, subd. (3).)

When the payor bank timely dishonors a check, section 4212 grants a bank the right to charge back the amount provisionally credited unless the

---

[1] Appellant's cause of action for breach of the statutory duties imposed on a bank under Financial Code sections 864 and 6660 was properly subject to demurrer. Under the terms of these two statutes, any limitations on a bank's ability to set off certain debts against a customer's account does not apply to a charge for a debt for uncollected funds or for dishonored checks cashed for a customer. (Fin. Code, §§ 864, subd. (a)(2), 6660, subd. (a)(2).)

[2] All subsequent statutory references are to the California Uniform Commercial Code unless we specify otherwise.

item has become final provided the bank gives its customer notice of the facts for the charge back within the time prescribed. (See *Lawrence* v. *Bank of America, supra*, 163 Cal.App.3d at pp. 435-436; *Hansen* v. *Bank of America* (1950) 101 Cal.App.2d 300, 303-304 [225 P.2d 665].) Specifically, the statute provides:

"(1) If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of the facts. These rights to revoke, charge back and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final (subdivision (3) of Section 4211 and subdivisions (2) and (3) of Section 4213)."

Appellant does not allege in her complaint or argue on appeal the credit she received from Mercury became final within the definitions set forth in section 4211, subdivision (3) and section 4213, subdivisions (2) and (3). Instead, appellant contends the mere passage of time renders the provisional credit final. This argument is not premised upon any statutory or case authority but instead upon a serious misreading of one of the comments to the Commercial Code upon which section 4212 is based.

Comment 1 explains the purpose underlying section 4212, subdivision (1). "Under current bank practice, in a major portion of cases banks make provisional settlement for items when they are first received and then await subsequent determination of whether the item will be finally paid. . . . Statistically, this practice of settling provisionally first and then awaiting final payment is justified because more than ninety-nine percent of such cash items are finally paid, with the result that in this great preponderance of cases it becomes unnecessary for the banks making provisional settlements to make any further entries. In due course the provisional settlements become final simply with the lapse of time. However, in those cases where the item being collected is not finally paid or where for various reasons the bank making the provisional settlement does not itself receive payment, . . . provision is mode for the reversal of the provisional settlements, charge—back of provisional credits and the right to obtain refund. Subsection (1) codifies and simplifies the statement of these rights." (Cal. U. Com. Code, § 4212, com. 1.)

Appellant focuses upon the comment's statement that some provisional settlements become final with the passage of time because there has been no

dishonor or nonpayment and argues the passage of time can render a provisional settlement final. This argument ignores the comment's next sentence which explains that in those cases where the collecting bank has not received payment it retains a right to charge back the account. The comment's observation concerning the passage of time goes only to the fact that many times a bank is not required to make any further entries to convert a provisional settlement into a final settlement because there has been no further action which denies payment. (*Northpark Nat. Bank* v. *Bankers Trust Co.* (S.D.N.Y. 1983) 572 F. Supp. 524, 525; 5 Hawkland & Lawrence, Uniform Commercial Code Series, *supra*, Bank Deposits and Collections, § 4-212:01, p. 503.) Further, the passage of time will make a provisional settlement final as to the payor bank if the *payor* bank does not timely dishonor the check. (§ 4213, subd. (1).)

This is not to say a collecting bank has an unlimited time within which to charge back its customer's account. Under section 4212, the collecting bank must "by its midnight deadline or within a longer reasonable time after it learns the facts," return the check or send the customer notice that the check was dishonored or otherwise not finally settled. (§ 4212, subd. (1); see *Security Pacific Nat. Bank* v. *Associated Motor Sales* (1980) 106 Cal.App.3d 171, 181 [165 Cal.Rptr. 38].) This midnight deadline refers to midnight on the bank's next banking day following the day on which it receives the check or notice of the dishonor. (§ 4104, subd. (1)(h).)

Further, a collecting bank may be estopped from charging back its customer's account where the bank has represented to the customer the check was final and the customer relied upon those representations to its detriment. (See *First National Bank* v. *Ulibarri* (1976) 38 Colo.App. 428 [557 P.2d 1221]; *First Georgia Bank* v. *Webster* (1983) 168 Ga.App. 307 [308 S.E.2d 579].) However, appellant has not alleged estoppel here.

■ Nonetheless, appellant still may maintain a cause of action against defendants. Section 4212 provides: "(4) The right to charge back is not affected by . . . [¶] (b) Failure by any bank to exercise ordinary care with respect to the item but any bank so failing remains liable."

This section permits the appellant to commence a cause of action to recover damages under section 4103 for Mercury's alleged negligence in handling the check for settlement. As the official comment to Commercial Code section 4212 explains, "The rule of subsection (4) relating to charge-back . . . applies irrespective of the cause of the nonpayment, and of the person ultimately liable for nonpayment. Thus, charge-back is permitted even where nonpayment results from the depositary bank's own negligence. Any other rule would result in litigation based upon a claim for wrongful

dishonor of other checks of the customer, with potential damages far in excess of the amount of the item. Any other rule would require a bank to determine difficult questions of fact. The customer's protection is found in the general obligation of good faith (Sections 1-203 and 4-103). If bad faith is established the customer's recovery 'includes other damages, if any, suffered by the party as a proximate consequence' (Section 4-103(5); see also Section 4-402)." (Cal. U. Com. Code, § 4212, com. 5.)

The official comment goes on to state: "It is clear that the charge-back does not relieve the bank from any liability for failure to exercise ordinary care in handling the item. The measure of damages for such failure is stated in Section 4-103(5)." (See also 5 Hawkland & Lawrence, Uniform Commercial Code Series, *supra*, Bank Deposits and Collections, § 4-212:09, pp. 519-520.)[3] (Cal. U. Com. Code, § 4212, com. 6.)

Section 4103, subdivision (5) provides: "The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount which could not have been realized by the use of ordinary care, and where there is bad faith it includes other damages, if any, suffered by the party as a proximate consequence."

The result, then, is that while Mercury may be entitled to charge back appellant's account and seek a refund for its provisional settlement, it is not entirely free of liability. Appellant has clearly alleged Mercury was negligent in its handling of the Nyeholt check and that, had the check been handled properly, there would have been sufficient funds on which final settlement would have been made. Thus, appellant has alleged sufficient facts to state a negligence cause of action under sections 4103 and 4212. To the extent appellant can allege and prove bad faith by Mercury, she would also be entitled to recover any damages proximately caused by Mercury's breach of its duty of care.[4] (§ 4103.)

■ Appellant, however, cannot recover for wrongful dishonor based upon the charge back since section 4212, subdivision (4) was intended to bar

---

[3] The California Uniform Commercial Code Comment incorporated these official comments into its discussion of section 4212. (Cal. U. Com. Code, § 4212, com. 4.) Unlike the Uniform Code, the California statute also permits the collecting bank to seek a refund from its customer if the account does not contain the amount charged back. (§ 4212, subd. (7)(b).)

[4] Respondents argue the only negligent entity was the Federal Reserve Bank which mishandled the check and, therefore, Mercury cannot be held liable. However, for purposes of demurrer we must assume all of the properly pleaded allegations in the complaint are true. (*Maheu* v. *CBS, Inc., supra*, 201 Cal.App.3d 662, 669-670.) Since appellant has alleged Mercury was negligent in the handling of the check, we must assume this allegation is correct for purposes of this discussion. If in fact the allegation is untrue, Mercury may later move for summary judgment and introduce evidence to support its contention.

such actions. (See Cal. U. Com. Code, § 4212, com. 5.) ▮ Further, appellant cannot maintain her action for conversion since the settlement never became final and, therefore, any money Mercury allegedly debited from appellant's account was in fact only a revocation of the provisional settlement and not the deprivation of personal property of appellant. (See *Cooper* v. *Union Bank, supra*, 9 Cal.3d at p. 379; *Morse* v. *Crocker National Bank* (1983) 142 Cal.App.3d 228, 232 [190 Cal.Rptr. 839].)

▮ Finally, appellant cannot maintain an action for a breach of a "quasi-fiduciary" duty. Without reaching the question whether a bank depositor relation can ever be deemed to be "quasi-fiduciary," we note the relationship between appellant and Mercury was that of principal and agent with the Commercial Code imposing upon Mercury a duty of ordinary care. (§ 4202, subd. (1)(a); see *Cooper* v. *Union Bank, supra*, 9 Cal.3d at p. 378; *Fireman's Fund Ins. Co.* v. *Security Pacific Nat. Bank, supra*, 85 Cal.App.3d 797, 820.) Any breach of that duty is recoverable under an action for negligence pursuant to section 4103 and 4212.

### III. APPELLANT HAS ALLEGED SUFFICIENT FACTS TO SUPPORT HER CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.

We now turn to the remaining causes of action for intentional infliction of emotional distress and "harassment" based upon defendant Winthrop's repeated demands that appellant sign a promissory note for the amount owed Mercury and Winthrop's refusal to direct her requests to appellant's attorney. Although couched in different titles, these two actions are identical and we discuss them under the rubric of intentional infliction of emotional distress.

Appellant contends that, for purposes of seeking a refund for the provisional settlement, the relationship between appellant and Mercury is essentially that of creditor and debtor. Mercury acknowledges its creditor status as to the refund it seeks from appellant. Thus, we examine appellant's allegations concerning its claim for intentional infliction of emotional distress in light of this creditor/debtor relationship.

▮ The essential elements of an action for intentional infliction of emotional distress are (1) outrageous conduct, (2) an intent to cause or a reckless disregard of the possibility of causing emotional distress, (3) severe or extreme emotional distress, and (4) actual and proximate cause of the emotional distress by the outrageous conduct. (*Carney* v. *Rotkin, Schmerin & McIntyre* (1988) 206 Cal.App.3d 1513, 1524 [254 Cal.Rptr. 478]; *Girard* v. *Ball* (1981) 125 Cal.App.3d 772, 786 [178 Cal.Rptr. 406].) The only appar-

ent question before us is whether appellant has sufficiently alleged outrageous conduct.[5]

■ In the area of collection practices, California recognizes a creditor has a qualified privilege to protect its economic interest, though that privilege may be lost if the creditor uses outrageous and unreasonable means in seeking payment. (*Bundren* v. *Superior Court* (1983) 145 Cal.App.3d 784, 789-790 [193 Cal.Rptr. 671]; see *Kruse* v. *Bank of America* (1988) 202 Cal.App.3d 38, 67 [248 Cal.Rptr. 217] [banks have right to pursue their financial interest but not in an impermissible manner]; *Bowden* v. *Spiegel, Inc.* (1950) 96 Cal.App.2d 793, 795 [216 P.2d 571].)

In determining whether the conduct is sufficiently outrageous or unreasonable to become actionable, it is not enough that the creditor's behavior is rude or insolent. (*Bundren* v. *Superior Court, supra,* 145 Cal.App.3d 784, 790; Rest.2d Torts, § 46, com. e, p. 74.) However, such conduct may rise to the level of outrageous conduct where the creditor knows the debtor is susceptible to emotional distress because of her physical or mental condition. (*Bundren* v. *Superior Court, supra,* 145 Cal.App.3d at p. 790; Rest.2d Torts, § 46, com. f, p. 75.)

Here, Winthrop knew appellant was elderly and the charge back placed her into a difficult financial situation. Further, Winthrop was told appellant's health had suffered because of the loss of this money yet she allegedly continued to call appellant every day to pressure her into signing a promissory note and threatening to attach her funds. Winthrop and Mercury made these threats even though they knew all of appellant's funds were with Mercury. Finally, Winthrop continued to place these threatening calls even though she had been directed to speak only with appellant's attorney. Under these facts, a jury may reasonably find Winthrop and Mercury's conduct was outrageous. (See *Bundren* v. *Superior Court, supra,* 145 Cal.App.3d at pp. 791-792; *Carney* v. *Rotkin, Schmerin & McIntyre, supra,* 206 Cal.App.3d at p. 1524.)

## DISPOSITION

The judgment is reversed as to appellant's causes of action for negligence and intentional infliction of emotional distress. The trial court's order

---

[5] Respondents do not address this issue at all except to the extent it argues all of appellant's causes of action will not lie since respondents had an absolute right to charge back appellant's account.

dismissing the remaining causes of action is affirmed. Appellant is to recover her costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.