[No. G037638. Fourth Dist., Div. Three. Sept. 20, 2007.]

SCOTT P. HOLCOMB, Plaintiff and Appellant, v.
WELLS FARGO BANK, N.A., et al., Defendants and Respondents.

**COUNSEL**

Scott P. Holcomb, in pro. per., for Plaintiff and Appellant.

Marcin Lambirth and John B. Marcin for Defendants and Respondents.

**OPINION**

**ARONSON, J.**—Plaintiff Scott P. Holcomb challenges the judgment entered after the trial court sustained demurrers to each of his claims against defendants Wells Fargo Bank, N.A. (Wells Fargo), and Dan Viles, a Wells Fargo vice-president and branch manager. Holcomb contends he properly alleged causes of action for negligent misrepresentation, breach of contract, and negligence. Wells Fargo contends Holcomb's claims fail because (a) Wells Fargo had an absolute right to charge back a provisional credit it had given to Holcomb on a $10,000 check when the payor bank dishonored the check; (b) Holcomb's breach of contract cause of action failed to specify whether the contract was written or oral; and (c) a depositor may not bring a claim for negligence against a bank.

We conclude Holcomb's complaint adequately stated a cause of action for negligent misrepresentation because it alleges Viles, as Wells Fargo's branch manager, assured Holcomb he could write checks against his deposit, despite knowing the payor bank had dishonored the deposited check. We agree with Wells Fargo, however, that Holcomb's breach of contract cause of action fails to adequately describe the contract and the terms purportedly breached. Finally, we conclude Holcomb's negligence claim fails because it (a) duplicates his negligent misrepresentation claim, and (b) fails to allege Wells Fargo breached any duties it owed to Holcomb. We also conclude, however, that the trial court should grant Holcomb an opportunity to amend his negligence cause of action. Accordingly, we reverse the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

According to Holcomb's complaint, he maintained a personal checking account with U.S. Bank and a business checking account under the name Holcomb Enterprises with Wells Fargo. On or about July 23, 2001, Holcomb obtained a loan from FHL Financial Group (FHL), and received a $22,473.54 check representing the loan proceeds. Holcomb deposited the check into his U.S. Bank account. The branch manager assured Holcomb U.S. Bank would not hold the funds, allowing Holcomb to immediately write checks against the deposit.

On August 3, 2001, Holcomb wrote a $10,000 check against the U.S. Bank account, and deposited it into his Wells Fargo business account. The Wells

Fargo teller told Holcomb a hold would be placed on his deposit until Wells Fargo could verify the funds with U.S. Bank. Around August 7, 2001, Holcomb received a telephone call from Viles, who informed Holcomb "that the funds had been verified and that he could begin using the funds deposited." Holcomb then began writing checks on his Wells Fargo account.

Holcomb, however, later received notices that checks written on both his U.S. Bank and Wells Fargo accounts were being returned due to nonsufficient funds. Holcomb learned the $10,000 check drawn on his U.S. Bank account had been returned for nonsufficient funds. Although U.S. Bank told Holcomb Wells Fargo had never presented the $10,000 check to it, Holcomb later discovered that Wells Fargo presented the check to U.S. Bank on August 6, 2001, which U.S. Bank rejected due to " 'Held Funds.' " To make up the shortfall in the Wells Fargo account, Wells Fargo requested that Holcomb obtain a $10,000 cashier's check from U.S. Bank and deposit it in his Wells Fargo account, which Holcomb did on August 13, 2001. The following day, Holcomb discovered his Wells Fargo account was overdrawn by $13,000. The $10,000 cashier's check Holcomb deposited was still in the Wells Fargo branch and had not been sent out for processing. Wells Fargo later withdrew $10,000 from Holcomb's U.S. Bank account and returned the cashier's check.

Because U.S. Bank improperly placed a hold on Holcomb's account, and failed to honor Holcomb's $10,000 check when presented by Wells Fargo, Holcomb suffered damage to his finances and credit. For example, TeleCheck, a national check verification service, placed a disapproval ban on checks from Holcomb Enterprises because an August 9 check to CompUSA had bounced. One of Holcomb's vendors, Techdata, closed Holcomb Enterprises' account because of a dishonored check. U.S. Bank admitted it had mishandled Holcomb's account, and attempted to repair the damage to Holcomb's credit, but continued to make errors which ruined Holcomb's credit rating and required him to refinance his house at an interest rate approximately three times greater than he would have received had his credit been intact.

Holcomb sued U.S. Bank, Wells Fargo, Viles, and others for damages arising from the hold placed on his U.S. Bank account. After the court sustained U.S. Bank's demurrers with leave to amend, Holcomb filed his first amended complaint, alleging claims against Wells Fargo and Viles for negligent misrepresentation (second cause of action), breach of contract (fourth cause of action),[1] and negligence (sixth cause of action). The trial

---

[1] The breach of contract claim did not include Viles.

court sustained demurrers to the second and sixth causes of action without leave to amend, and sustained demurrers to the fourth cause of action with leave to amend. Holcomb declined to amend his fourth cause of action, and the trial court entered judgment dismissing Holcomb's action as to Wells Fargo and Viles. Holcomb now appeals.

## II

### STANDARD OF REVIEW

"On review of an order sustaining a demurrer without leave to amend, our standard of review is de novo, 'i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' [Citation.]" (*Santa Teresa Citizen Action Group v. State Energy Resources Conservation & Development Com.* (2003) 105 Cal.App.4th 1441, 1445 [130 Cal.Rptr.2d 392].) " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed." [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. . . .' " (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].)

"Since we review the trial court's action, and not its reasons therefor, we examine each cause of action to determine whether there are other grounds for sustaining the demurrer *without leave to amend*. 'Ordinarily it is an abuse of discretion to sustain a general demurrer to a complaint without leave to amend if there is a reasonable possibility that the defect in the complaint can be cured by amendment. [Citations.] However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion. [Citations.] Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. [Citation.]' [Citations.]" (*Symonds v. Mercury Savings & Loan Assn.* (1990) 225 Cal.App.3d 1458, 1463 [275 Cal.Rptr. 871] (*Symonds*).)

When a trial court grants a plaintiff leave to amend, but the plaintiff elects not to do so, "it is presumed that the complaint states as strong a case as is possible [citation]; and the judgment of dismissal must be affirmed if the unamended complaint is objectionable on any ground raised by the demurrer. [Citations.]" (*Otworth v. Southern Pac. Transportation Co.* (1985) 166

Cal.App.3d 452, 457 [212 Cal.Rptr. 743].) Accordingly, " 'we do not consider the possibility that any defects in it could be cured by amendment . . . .' " (*Ibarra v. California Coastal Com.* (1986) 182 Cal.App.3d 687, 692 [227 Cal.Rptr. 371].)

## III

### DISCUSSION

A. *The Trial Court Erred in Sustaining Demurrers to Holcomb's Negligent Misrepresentation Cause of Action Without Leave to Amend*

The trial court sustained demurrers to Holcomb's negligent misrepresentation and negligence causes of action because it interpreted *Copesky v. Superior Court* (1991) 229 Cal.App.3d 678 [280 Cal.Rptr. 338] (*Copesky*) and *Mitsui Manufacturers Bank v. Superior Court* (1989) 212 Cal.App.3d 726 [260 Cal.Rptr. 793] (*Mitsui*), to prohibit a depositor from bringing a tort cause of action against a bank.[2] Neither of these cases, however, stands for this proposition.

■ *Copesky* considered whether a depositor could state a tort cause of action against the depositor's bank for allegedly breaching its fiduciary duty by wrongfully cashing checks without proper signatures. *Copesky* held simply "that banks, in general . . . , are not fiduciaries for their depositors; and that the bank-depositor relationship is not a 'special relationship' . . . , such as to give rise to tort damages when an implied contractual covenant of good faith is broken." (*Copesky, supra*, 229 Cal.App.3d at p. 694.) Although the plaintiff in *Copesky* had included a negligence cause of action in his complaint, the defendant did not challenge this claim in the trial court or on appeal. Similarly, *Mitsui* held that a borrower could not assert a tort action for breach of the implied covenant of good faith and fair dealing against a lender. Holcomb is not seeking to recover tort damages for violation of the covenant of good faith and fair dealing, but for negligent misrepresentation and negligence. Thus, neither *Copesky* nor *Mitsui* applies to the present case.

---

[2] The trial court noted: "All right. My tentative is based primarily on the fact that [Holcomb is] trying to allege tort causes of action for negligence and negligent misrepresentation, and if [he had] read the *Copesky* case and *Mitsui* . . . case, that is not allowed except in the insurance bad faith field . . . ."

■ The handling and collection of negotiable instruments by banks are governed by divisions 3 and 4 of the California Uniform Commercial Code.[3] Section 1103, subdivision (b), provides: "Unless displaced by the particular provisions of this code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause supplement its provisions." Thus, absent displacement by the California Uniform Commercial Code, nothing bars a depositor from bringing an action for negligent misrepresentation or negligence against a bank.

Wells Fargo contends the California Uniform Commercial Code bars Holcomb's negligent misrepresentation claim because section 4214 provided it an absolute right to charge back Holcomb's account when U.S. Bank dishonored the $10,000 check, and it did not lose that right by telling Holcomb he could write checks against the deposit. In considering Wells Fargo's contention, we briefly review the law and procedure pertaining to bank deposits and collections.

■ "When a customer deposits a check drawn on another bank, the customer receives a provisional credit for the amount of the check. [Citations.] [Fn. omitted.] The collecting bank, acting as the customer's agent, then forwards the check to the payor bank or a presenting bank which gives the collecting bank a provisional credit. [Citation.] If the check is forwarded to a presenting bank, the presenting bank in turn presents the check to the payor bank from which the check is to be drawn and receives a provisional credit. If the payor bank does not promptly dishonor the check, the provisional settlements throughout this chain of banks become final." (*Symonds, supra*, 225 Cal.App.3d at p. 1464.) Until final settlement for an item is made, "any settlement given for the item is provisional." (§ 4201.)

■ The right of a bank to charge back an item is set forth in section 4214, which provides in relevant part: "If a collecting bank has made provisional settlement with its customer for an item and fails by reason of dishonor, suspension of payments by a bank, or otherwise to receive settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account, or obtain refund from its customer, whether or not it is able to return the item, if by its midnight deadline or within a longer

---

[3] All statutory references are to the California Uniform Commercial Code unless otherwise noted.

reasonable time after it learns the facts it returns the item or sends notification of the facts. If the return or notice is delayed beyond the bank's midnight deadline[4] or a longer reasonable time after it learns the facts, the bank may revoke the settlement, charge back the credit, or obtain refund from its customer, but it is liable for any loss resulting from the delay. These rights to revoke, charge back and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final." (§ 4214, subd. (a).) A collecting bank's right to charge back is not affected by the customer's previous use of the provisional credit given, or even the bank's own negligence in handling the check.[5] (§ 4214, subd. (d)(1), (2).) Thus, Wells Fargo had the right to charge back Holcomb's $10,000 provisional credit after U.S. Bank dishonored Holcomb's check.

■ Holcomb's negligent misrepresentation claim, however, does not take issue with Wells Fargo's right to charge back, but with statements made by Wells Fargo's branch manager, Viles, which induced Holcomb to write checks against his $10,000 deposit. There is nothing in the code prohibiting a claim based on a depositor's detrimental reliance on a bank employee's incorrect statements.

The circumstances here are comparable to those found in *First Georgia Bank v. Webster* (1983) 168 Ga.App. 307 [308 S.E.2d 579] (*Webster*) and *First National Bank of Denver v. Ulibarri* (1976) 38 Colo.App. 428 [557 P.2d 1221] (*Ulibarri*), cases interpreting the Uniform Commercial Code and cited with approval in California. (See *Symonds, supra,* 225 Cal.App.3d at p. 1466.) In *Webster,* the court determined the Uniform Commercial Code's specification of a bank's duties did not displace a depositor's common law negligence action based on a bank's incorrect statement to a depositor that the check he had deposited was " 'good.' " (*Webster,* 308 S.E.2d at pp. 580–581.) Similarly, in *Ulibarri,* the court recognized that a depositor could assert estoppel against a bank's recovery action, where the depositor released a diamond ring

---

[4] A bank's " '[m]idnight deadline' " is defined as "midnight on its next banking day following the banking day on which it receives the relevant item or notice or from which the time for taking action commences to run, whichever is later." (§ 4104, subd. (a)(10).) " 'Banking day' " is defined as "the part of a day on which a bank is open to the public for carrying on substantially all of its banking functions." (§ 4104, subd. (a)(3).) Thus, whether Saturday is a banking day is determined by the banking functions offered on that day. (See, e.g., *United Bank of Crete-Steger v. Gainer Bank, N.A.* (7th Cir. 1989) 874 F.2d 475, 480 [holding bank's activities of accepting deposits and allowing withdrawals were insufficient to make Saturday a "banking day"].)

[5] Although retaining its right to charge back, a bank may nonetheless be held liable for harm stemming from its own negligence in handling an item. (§ 4214, subd. (d)(2).)

to a customer after the bank assured the depositor that the customer's check had been " 'finally settled.' " (*Ulibarri*, 557 P.2d at pp. 1222–1223.) Thus, even though the California Uniform Commercial Code furnished Wells Fargo with an absolute right to charge back the check upon U.S. Bank's dishonor, it does not shield Wells Fargo from damages due to its branch manager's alleged negligent misrepresentations regarding the check's status.

■ With this understanding, we now focus on the specific allegations in Holcomb's complaint: "Despite the fact that, on August 7, Wells Fargo's branch manager, Viles, had told Holcomb the funds had cleared, he was informed that the $10,000.00 check drawn on his US Bank account had, in fact, been returned for non-sufficient funds." A reasonable interpretation of the complaint is that Viles already had received notice of U.S. Bank's dishonor of the check at the time he told Holcomb the check had cleared and that he could write checks against the deposit. Negligent misrepresentation encompasses " '[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true' [citation], and '[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true' . . . ." (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 174 [132 Cal.Rptr.2d 490, 65 P.3d 1255], citations omitted.) If Viles had notice of U.S. Bank's dishonor, Viles would have no reasonable basis for telling Holcomb the check had cleared and that Holcomb could write checks against it. Accordingly, we conclude the trial court erred in sustaining demurrers to Holcomb's negligent misrepresentation cause of action.

We caution, however, that a bank should not incur liability for simply telling a depositor that he or she may write checks against deposited funds where the depository bank has granted the depositor a provisional settlement and not yet received a notice of dishonor from the payor or intermediary bank. As noted in the official comment to section 4214: "Under current bank practice, in a major portion of cases banks make provisional settlement for items when they are first received and then await subsequent determination of whether the item will be finally paid. This is the principal characteristic of what are referred to in banking parlance as 'cash items.' Statistically, this practice of settling provisionally first and then awaiting final payment is justified because the vast majority of such cash items are finally paid, with the result that in this great preponderance of cases it becomes unnecessary for the banks making the provisional settlements to make any further entries. In due course the provisional settlements become final simply with the lapse of time." (Official Comments on U. Com. Code, 23B West's Ann. Cal. U. Com. Code (2002 ed.) foll. § 4214, p. 114.) Thus, a bank employee having no

notice of dishonor has a reasonable basis for telling a depositor that the deposited funds are available simply because the vast majority of provisional settlements become final. A closer question, however, is at what point a bank employee has a reasonable basis for representing to a depositor that an item has "cleared" even though a final settlement with the payor bank has not been reached. Because we conclude Holcomb's complaint adequately alleges negligent misrepresentation, we need not address this issue.

Finally, Wells Fargo argues that Holcomb's negligent misrepresentation cause of action fails because Holcomb, by depositing the $10,000 check, warranted to Wells Fargo that sufficient funds were in his U.S. Bank account to cover the check. Thus, Wells Fargo reasons, Viles had reasonable grounds for believing the check was good when he told Holcomb he could write checks against the deposit. In support of its warranty argument, Wells Fargo vaguely directs us to divisions 3 and 4 of the California Uniform Commercial Code. Our review of the 120 or so sections within these two divisions reveals a number of warranties made by a depositor presenting a check (see, e.g., §§ 3416, 3417, 4207, 4208), but we have been unable to locate a specific section providing that a depositor, by presenting a check for payment, warrants there are sufficient funds in the payor bank to cover the item. Unearthing no authority to support this argument, we do not consider it further.

B. *The Trial Court Did Not Err in Sustaining Demurrers to Holcomb's Breach of Contract Cause of Action with Leave to Amend*

The trial court sustained demurrers to Holcomb's breach of contract cause of action with leave to amend because the complaint did not specify "whether the contract is written, is oral, or is implied by conduct." (Code Civ. Proc., § 430.10, subd. (g).) Holcomb contends the trial court erred because the complaint sufficiently alleged the contract was implied by conduct. We disagree.

California Uniform Commercial Code division 4 governs bank deposits and collections, including the care a bank is required to exercise when handling deposited checks and the damages available when a bank fails to exercise such care. But the California Uniform Commercial Code also allows a bank and its customers to alter the terms by agreement, within certain

limits. Specifically, section 4103, subdivision (a), provides: "The effect of the provisions of this division may be varied by agreement, but the parties to the agreement cannot disclaim a bank's responsibility for its lack of good faith or failure to exercise ordinary care or limit the measure of damages for the lack or failure. However, the parties may determine by agreement the standards by which the bank's responsibility is to be measured if those standards are not manifestly unreasonable."

In its fourth cause of action for breach of contract, the complaint alleges: "In opening a checking account with Wells Fargo Bank, Holcomb entered into a contract with Wells Fargo that governed, *inter alia*, the handling of funds he deposited with the bank. Implicit in that contract is the bank's agreement to handle Holcomb's account accurately and in a professional and business-like manner." The foregoing does not describe the contractual standards to be applied to the bank's actions nor how these standards might vary from those imposed by the California Uniform Commercial Code. Moreover, the complaint does not describe an implied contract, but rather an express contract from which certain terms may be implied. Without specifying the nature of the contract, nor the specific terms Holcomb claims the bank had breached, the compliant fails to adequately state a cause of action for breach of contract. Thus, we conclude the trial court did not err in sustaining Wells Fargo's demurrer with leave to amend.

### C. *The Complaint Fails to State a Cause of Action for Negligence*

The California Uniform Commercial Code expressly provides that a bank may be liable for failing to exercise ordinary care in processing checks, but limits damages in most instances to the amount of the item less the amount that could not have been realized by the exercise of ordinary care. (§ 4103, subd. (e).) An aggrieved party also may recover consequential damages if the bank acts in bad faith. (*Ibid.*)

Holcomb's negligence cause of action focuses on three alleged acts by Wells Fargo. The first is that "Viles, acting for Wells Fargo Bank, told Holcomb that his August 3 deposit with Wells Fargo had cleared when, in fact, payment had been rejected by US Bank." These allegations are merely duplicative of Holcomb's negligent misrepresentation cause of action, and therefore insufficient to support a separate cause of action. (See *Award Metals, Inc. v. Superior Court* (1991) 228 Cal.App.3d 1128, 1135 [279 Cal.Rptr. 459].)

■ The second negligent act alleged is that "Wells Fargo Bank failed to properly process the cashiers' check Holcomb deposited on August 13, and instead allowed it to sit in a teller's drawer, creating a false $10,000 shortfall in Holcomb's account with Wells Fargo." We conclude these allegations are also insufficient. Section 4202, subdivision (a), provides that a collecting bank shall exercise ordinary care in presenting an item or sending it for presentment. Subdivision (b) of section 4202 provides that "[a] collecting bank exercises ordinary care under subdivision (a) by taking proper action before its midnight deadline following receipt of an item . . . ." As noted above, a bank's midnight deadline is midnight of the next banking day following receipt of an item. (§ 4104, subd. (a)(10).) The complaint alleges Holcomb deposited the cashier's check on August 13, and complains that Wells Fargo still had the item in its branch during business hours on August 14. Because Wells Fargo's midnight deadline had not yet passed on the 14th, these allegations do not establish a lack of ordinary care, and cannot state a negligence claim.

■ The final basis for Holcomb's negligence claim is the allegation that "Wells Fargo decline[d] to offer any letter of explanation to those creditor's [*sic*] of Holcomb Enterprises whose checks had been rejected by Wells Fargo as a result of the errors and actions of US Bank." Holcomb does not offer any legal authority imposing negligence liability on a collecting bank arising from its failure to explain to a customer's creditors the circumstances surrounding a payor bank's wrongful dishonor. Indeed, section 4202, subdivision (c), expressly provides that if a collecting bank exercises ordinary care in presenting or sending an item, it "is not liable for the insolvency, neglect, misconduct, mistake, or default of another bank . . . ."

Although we conclude the complaint does not adequately plead a negligence cause of action against Wells Fargo, we note Holcomb's pleading does not foreclose the possibility that Wells Fargo acted negligently in its handling of the cashier's check. The trial court did not consider whether Holcomb could amend his negligence cause of action to state an adequate claim because the court sustained demurrers based on its mistaken impression that a depositor could not bring a negligence cause of action against a bank. Thus, in light of the liberal pleading rules, Holcomb should be afforded an opportunity to amend this cause of action on remand.

## IV

### DISPOSITION

The judgment is reversed. Holcomb is entitled to his costs of this appeal.

Rylaarsdam, Acting P. J., and Ikola, J., concurred.

On October 22, 2007, the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied December 19, 2007, S157668. Baxter, J., and Corrigan, J., did not participate therein.