[No. B026485. Second Dist., Div. Four. May 24, 1988.]

ROBERT MAHEU, Plaintiff and Appellant, v.
CBS, INC., et al., Defendants and Respondents.

COUNSEL

Hurley, Grassini & Wrinkle and Pat Murphy for Plaintiff and Appellant.

O'Melveny & Myers, Robert C. Vanderet, Douglas W. Abendroth, Shield & Smith, J. Lawrence Judy and Douglas Fee for Defendants and Respondents.

OPINION

GEORGE, J.—Robert Maheu appeals from an order of dismissal entered after the trial court sustained demurrers to his fourth amended complaint without leave to amend. The action arose out of the publication of Citizen Hughes, a best-selling book about Howard Hughes.

Appellant was Hughes's aide from approximately 1956 to 1970. Appellant never met Hughes personally, but communicated with him largely by means of written notes throughout the final decades of Hughes's life. Appellant brought his action against Donald Ray Woolbright, author Michael Drosnin, publishers CBS, Inc., Bantam Books and Playboy Enterprises, Inc., and booksellers B. Dalton, Inc., and Hunter's Books.[1] In the fourth amended complaint, appellant alleged seven causes of action: conversion, "conversion-constructive trust," invasion of privacy ("false light," "physical intrusion," and appropriation of name, likeness or personality), commercial appropriation of the right of publicity, and interference with prospective economic advantage.

Appellant contends (1) the first and second causes of action adequately state the elements of conversion and are not barred by the statute of limitations or preempted by the Copyright Act; (2) the third, fourth, fifth and sixth causes of action adequately state the elements of public disclosure of private facts, intrusion, appropriation, and false light invasion of privacy and are not barred by the statute of limitations; and (3) the seventh cause of action adequately states the elements of intentional interference with prospective economic advantage. We affirm the order for the reasons that follow.

---

[1] In June 1985, appellant voluntarily dismissed the action as to two other defendants, Summa Corporation, successor to Hughes Tool Company, and Roy Crawford, a Summa employee. Woolbright is identified in the record only by the allegation in the complaint that he and Summa Corporation "wrongfully . . . took . . . and otherwise converted Plaintiff's letters to their own use."

## FACTUAL AND PROCEDURAL HISTORY

Appellant filed this action on April 24, 1985. In his first and second causes of action for conversion, appellant alleged he was the recipient and addressee of "confidential letters" from Hughes. He was the owner of, and had a property interest in, the letters and their contents.[2] On June 5, 1974, defendant Woolbright and former defendant Summa Corporation converted these documents to their own use. In June 1977, respondents conspired to acquire the papers, and thereafter Citizen Hughes was written and published in November or December 1984. Appellant did not learn of this conversion until January 1985, and did not learn of Playboy's publication of certain of the letters until November or December 1984. Appellant alleged he suffered a monetary loss consisting of the letters' diminution in value because of the prior publication, and his lost profits. He asked that a constructive trust be imposed upon the profits respondents derived from their publication.

Appellant's subsequent causes of action incorporated the allegations of the first cause of action. In his third cause of action for "false light" invasion of privacy, appellant alleged that prior to and during 1985, respondents invaded his right to privacy by reading his confidential letters and by writing about, publishing, and distributing the letters in the book Citizen Hughes. The basis of the "false light" allegation is the book's characterization of the relationship between appellant and Hughes as a "courtship and a marriage," with descriptions of the men exchanging vows, and Hughes telling appellant they would spend the rest of their lives together and compelling appellant to vow never to leave Hughes.

In his fourth cause of action for "physical" invasion of privacy, appellant alleged that "members of the conspiracy" broke into a locked, private building where the letters were stored and further invaded appellant's privacy by taking possession of the letters, which they knew were appellant's. This intrusion was ratified and adopted by the other coconspirators. As a fifth cause of action, appellant alleged the respondents appropriated his name, likeness and personality by publishing the book and the magazine. In the sixth cause of action for commercial appropriation of the right of publicity, appellant alleged his property and privacy interests in the confidential letters gave him a right to publish his own account of his relationship with Hughes, using the private letters, which right was usurped by respondents' own publication.

In his seventh cause of action for intentional interference with prospective economic advantage, appellant alleged he had prospective and present

---

[2] In the original complaint, appellant alleged that Crawford persuaded appellant to store the letters in a warehouse owned by Summa Corporation for safekeeping, and due to the negligence of these defendants, the letters were stolen from this site.

contractual relationships with various entities and persons, including a publisher, for the publication and sale of the letters and appellant's story to the public. Respondents knew of the existing contract and appellant's economic expectations with regard to the letters but nevertheless proceeded to publish and distribute Citizen Hughes, with the intention of destroying appellant's right to sell his letters and diminishing the publicity value of his story.

Respondents CBS, Inc., Michael Drosnin, Playboy Enterprises, Inc., and Bantam Books, Inc., demurred to appellant's fourth amended complaint. Their grounds were that all causes of action failed to state sufficient facts (Code Civ. Proc., § 430.10, subd. (e)); that the first and second causes of action were barred by the applicable statute of limitations (Code Civ. Proc., § 338, subd. 3); that the fourth cause of action was barred by the applicable statute of limitations (Code Civ. Proc., § 340, subd. 3); and that the seventh cause of action was uncertain (Code Civ. Proc., § 430.10, subd. (f)). Respondents B. Dalton Company and Hunter's Books separately demurred and later joined in the demurrers of the other respondents.

The trial court sustained respondents' demurrers without leave to amend as to all causes of action. The demurrers to the first and second causes of action were sustained on the grounds the taking of intangible literary property did not constitute a conversion; the statute of limitations barred the action since appellant failed to allege an overt act in furtherance of the conspiracy within the limitations period, and the claims were preempted by the federal Copyright Act. The demurrers to the third cause of action were sustained because the statements alleged to constitute "false light" invasion were opinion; the facts disclosed did not constitute "private facts," and the facts were newsworthy. The demurrers to the fourth cause of action were sustained on the ground there was no physical intrusion. The demurrers to the fifth and sixth causes of action were sustained because appropriation does not include dissemination of matters of legitimate public interest within a constitutionally protected medium. The demurrers to the seventh cause of action were sustained because the conduct alleged was within the privilege of free competition; appellant had no protected property right in newsworthy facts within the public domain, and appellant had not alleged facts showing a definite prospect of economic gain. The entry of the order sustaining the demurrers without leave to amend was followed by an order of dismissal. This appeal followed.

## DISCUSSION

■ In reviewing an order of dismissal entered after the sustaining of a demurrer without leave to amend, "we treat the demurrer as admitting all material facts properly pleaded and all reasonable inferences which can be

drawn therefrom. [Citations.] The function of a demurrer is to test the sufficiency of a pleading by raising questions of law. [Citations.] It is error to sustain a demurrer where a plaintiff has stated a cause of action under any possible legal theory. [Citations.]" (*Von Batsch* v. *American Dist. Telegraph Co.* (1985) 175 Cal.App.3d 1111, 1117 [222 Cal.Rptr. 239].) However, even if we conclude the trial court erred in its reasons for sustaining the demurrers, "since 'it is the validity of the court's action in sustaining the demurrer which is reviewable and not the court's statement of reasons for its action' [citation], we examine each cause of action to determine whether there are any other grounds for sustaining demurrers without leave to amend." (*Fuhrman* v. *California Satellite Systems* (1986) 179 Cal.App.3d 408, 419 [231 Cal.Rptr. 113].)

If we determine a trial court was correct in its conclusion that the allegations of the complaint did not state any cause of action, we must then decide whether the trial court should have granted leave to amend. "Ordinarily it is an abuse of discretion to sustain a general demurrer to a complaint without leave to amend if there is a reasonable possibility that the defect in the complaint can be cured by amendment. [Citations.] ' "However, the burden is on the plaintiff to demonstrate that the trial court abused its discretion. [Citations.] *Plaintiff must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.* [Citation.]" ' " (*Profile Structures, Inc.* v. *Long Beach Bldg. Material Co.* (1986) 181 Cal.App.3d 437, 444 [226 Cal.Rptr. 192], italics added; *Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

In the present case, the first cause of action had survived earlier challenges by way of demurrer based on the assertion the statute of limitations had run and the federal Copyright Act preempted this claim. The demurrers *had* been sustained on *other* grounds with leave to amend. When the trial court indicated at the hearing on the latest demurrer that it was sustaining the demurrers on these additional grounds, appellant moved, or attempted to move, to amend. However, appellant did not meet his burden of offering a proposed amendment to remedy the problems of preemption or the statute of limitations, and we may therefore consider only whether the causes of action, including the first, presently state valid claims.

## I

### WHETHER THE FIRST AND SECOND CAUSES OF ACTION STATE VALID CLAIMS FOR CONVERSION

Appellant contends the first and second causes of action are not barred by the statute of limitations and are not preempted by the federal Copyright

Act of 1976. We conclude that appellant's claim is preempted to the extent it seeks recovery based on reproduction of the intangible literary or intellectual property contained in the letters, and is barred by the statute of limitations to the extent it seeks recovery for conversion of the physical letters themselves.

### A. *Preemption*

■ "The Copyright Act [17 U.S.C.A. § 301] sets out the test for preemption of that state statutory or common law which may conflict with the federal policies embodied in the Act. . . . First, the work of authorship in which rights are claimed must fall within the 'subject matter of copyright' as defined in §§ 102 and 103 of the Act." (*Harper & Row Publishers, Inc.* v. *Nation Enterprises* (2d Cir. 1983) 723 F.2d 195, 199-200, revd. on other grounds (1985) 471 U.S. 539 [85 L.Ed.2d 588, 105 S.Ct. 2218].) Second, if the state law creates " 'legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified in section 106,' [fn. omitted]" it is preempted. (*Harper & Row Publishers, Inc.* v. *Nation Enterprises, supra,* 723 F.2d 195, 200; see 1 Nimmer on Copyright (1978) § 1.01[B], at p. 1-9.) "When a right defined by state law may be abridged by an act which, in and of itself, would infringe one of the exclusive rights," the state law claim must be deemed preempted. (*Harper & Row Publishers, Inc.* v. *Nation Enterprises, supra,* 723 F.2d 195, 200.) "Conversely, when a state law violation is predicated upon an act incorporating elements beyond mere reproduction or the like, the rights involved are not equivalent and preemption will not occur. [Citations.]" (*Ibid.*)

■ As to the first criterion, there can be little doubt appellant's letters were copyrightable, since creation of a nonfiction work, even a compilation of pure facts, entails originality and can be copyrighted. (*Harper & Row* v. *Nation Enterprises, supra,* 471 U.S. at p. 547 [85 L.Ed.2d at pp. 598-599].) Moreover, the Copyright Act eliminated publication as the dividing line between common law and statutory protection, "extending statutory protection to all works from the time of their creation." (*Id.* at p. 552 [85 L.Ed.2d at p. 602].) The Act "created a single federal system for both published and unpublished works." (1 Nimmer on Copyright, *supra,* § 1.01[B], at p. 1-6, fn. omitted.)

Furthermore, "Congress expressly stated that section 301 is intended to prevent 'the States from protecting . . . [a work] even if it fails to achieve Federal statutory copyright because it is too minimal or lacking in originality to qualify, or because it has fallen into the public domain.' H.R.Rep. No. 1476, 94th Cong., 2d Sess. 131, reprinted in 1976 U.S. Code Cong. & Ad.

News 5659, 5747." (*Ehat* v. *Tanner* (10th Cir. 1985) 780 F.2d 876, 877.) "Thus, if a work by reason of its content falls 'within the subject matter of copyright as specified by sections 102 and 103,' [fn. omitted] it is not excluded from the ambit of federal preemption simply because it is ineligible for federal protection by reason of its failure to meet the prescribed federal standards. [Fn. omitted.]" (1 Nimmer on Copyright, *supra*, § 1.01[B], at p. 1-22.2.) Therefore, notwithstanding appellant's failure to comply with relevant statutory notice and other requirements (17 U.S.C.A. §§ 106, 401, and 408), his letters still fall within the subject matter of federal copyright law.

The second criterion is whether the right sought to be protected is equivalent to one within the general scope of copyright. In *Harper & Row Publishers, Inc.* v. *Nation Enterprises, supra,* 723 F.2d 195, based upon the unlawful *possession* of physical property consisting of a manuscript of Gerald Ford's memoirs (*id.* at pp. 200-201), the cross-appellants asserted in the lower court, and on appeal, the existence of a conversion premised upon unauthorized *publication*. The court noted that if unauthorized publication was the gravamen of their claim, the right cross-appellants sought to protect "is coextensive with an exclusive right already safeguarded by the Act—namely, control over reproduction and derivative use of copyrighted material"— and as such, was preempted. (*Id.* at p. 201.) But if the claim was based upon the possession of the papers themselves, it would not be subject to preemption: "Conversion, as thus described, is a tort involving acts—possession and control of chattels—which are qualitatively different from those proscribed by copyright law." (*Ibid.*; *Oddo* v. *Ries* (9th Cir. 1984) 743 F.2d 630, 635.)[3] In *Harper,* cross-appellants failed to state a cause of action for conversion because the taking, reproduction and return of a manuscript constituted a mere temporary interference with property rights, rather than dominion and control to the complete exclusion of the author. (723 F.2d 195; see *Dowling* v. *United States* (1985) 473 U.S. 207, 215, fn. 7 [87 L.Ed.2d 152, 159, 105 S.Ct. 3127].)

---

[3] In commenting upon a proposed subdivision of section 301 which would have defined the causes of action not preempted, including conversion, Nimmer observes the tort relates to "interference with tangible rather than intangible property, and hence should be held to be immune from preemption. 'Nothing contained in section 301 precludes the owner of a material embodiment of a copy . . . from enforcing a claim of conversion against one who takes possession of the copy . . . without consent.' [Citation.] Under this view of the tort, the mere act of reproduction does not constitute conversion since reproduction constitutes an interference with the intangible literary or artistic property right, not with the tangible property right in the chattel which is being reproduced. [Citations.] For this reason, there is no preemption of state conversion law, since the rights are not 'equivalent' to copyright. If, however, contrary to the usual view of conversion [citation], it is regarded as encompassing unauthorized reproductions, then the rights created are indeed 'equivalent' to copyright, and the state law is preempted. [Citations.]" (1 Nimmer on Copyright, *supra*, pp. 1-14.4(1)–1-14.5, fn. 51.)

In *Ehat* v. *Tanner, supra,* 780 F.2d 876, a scholar brought an action for unfair competition and unjust enrichment, state law claims which were held preempted by the federal copyright statute. The scholar examined and took quotations from a historical journal and added his own notes and comments. The material was removed, copied, and replaced. One of the unauthorized copies "found its way" to defendants, who had no part in the removal. The defendants blacked out the material added by the scholar and printed and sold the original extracts to the public. (*Id.* at p. 877.) The court concluded that "Ehat did not allege a state law claim of conversion to recover for the physical deprivation of his notes. Instead, he sought to recover for damage flowing from their reproduction and distribution. [Citation.] Such reproduction interferes with an intangible literary or artistic property right equivalent to copyright. [Citation.]" (*Id.* at p. 878.)

Similarly, in the present case, appellant seeks to recover for damages arising from the reproduction and distribution of the letters, and to that extent his claim is preempted by the federal Copyright Act of 1976. However, he seeks also to recover for "the value of the Plaintiff's letters at the time of the conversion," and asserts on appeal that his damages emanate from the conversion of the physical property. Here, unlike the above-cited cases, the letters themselves allegedly were removed without being returned. Therefore, we must next determine whether a claim was stated for the conversion of the physical property.

B. *Statute of Limitations*

In an action based on civil conspiracy, the applicable statute of limitations is determined by the nature of the action in which the conspiracy is alleged. (*Bedolla* v. *Logan & Frazer* (1975) 52 Cal.App.3d 118, 136 [125 Cal.Rptr. 59].) In this case, the conspiracy is based on conversion, for which the limitations period is three years. (Code Civ. Proc, § 338, subd. 3.) Normally, that statute commences to run from the date of the conversion, even though the injured person is ignorant of his or her rights, except where it is alleged there was a fraudulent concealment. (*Bennett* v. *Hibernia Bank* (1956) 47 Cal.2d 540, 561 [305 P.2d 20].) Appellant has not alleged such concealment. Therefore, the statute of limitations, if calculated based upon either the original alleged taking from the building in 1974 or subsequent acquisition by the "media" respondents in 1977, clearly would have expired. However, while the conspiracy exists, the statute of limitations does not commence to run until the "cessation of the wrongful acts committed in furtherance of the conspiracy. [Citation.]" (*Schessler* v. *Keck* (1954) 125 Cal.App.2d 827, 832 [271 P.2d 588].) The cause of action based on conspiracy " 'accrues on the date of the commission of the last overt act in pur-

suance of the conspiracy,'" a date which must be alleged. (*Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 789 [157 Cal.Rptr. 392, 598 P.2d 45].)

In the present case, appellant alleged that the last overt act of the conspiracy was publication in late 1984 or early 1985, thus asserting his complaint was timely. Although we observe the apparent breadth of the notion of "last overt act" as discussed in *Wyatt* v. *Union Mortgage Co., supra,* 24 Cal.3d 773, 786-789, and *People* v. *Zamora* (1976) 18 Cal.3d 538 [134 Cal.Rptr. 784, 557 P.2d 75], we cannot apply it to an act of publication, a distinct act involving not the taking of the property but rather the diminution of the intangible value of the property, and as such an act subject to federal preemption as an infringement of copyright. (Compare *Dowling* v. *United States, supra,* 473 U.S. 207, 216-218 [87 L.Ed.2d at pp. 159-161].) The conversion of the physical property is alleged to have occurred during the mid-1970's, and any conspiracy in furtherance of that conversion has not been alleged to have occurred after that period. We conclude appellant's claims for conversion must fail.

## II

### WHETHER APPELLANT STATES VALID CLAIMS FOR INVASION OF PRIVACY AND PUBLICITY RIGHTS

A. *"False Light"*

Appellant alleged in his third cause of action that respondents invaded his privacy by publishing material reflecting that he had a relationship with Hughes in the nature of a marriage. Appellant alleged respondents published with knowledge of the falsity of the material or in reckless disregard of the truth. On appeal, appellant characterizes this cause of action as one for "public disclosure of private facts."

■ The United States Supreme Court has "defined a zone of constitutional protection within which one could publish concerning a public figure without fear of liability. That constitutional protection does not depend on the label given the stated cause of action [citation]; it bars not only actions for defamation, but also claims for invasion of privacy [citations]." (*Reader's Digest Assn.* v. *Superior Court* (1984) 37 Cal.3d 244, 265 [208 Cal.Rptr. 137, 690 P.2d 610].)

■ "The cause of action for invasion of privacy includes three elements: (1) Public disclosure of (2) private facts which are (3) offensive and objectionable to a reasonable person of ordinary sensibilities. [Citation.]" (*Wasser* v. *San Diego Union* (1987) 191 Cal.App.3d 1455, 1460 [236 Cal.Rptr. 772].)

The publication of Citizen Hughes constituted the first element of public disclosure. ■ "As to the second element, publication of private facts means the unwanted publication of intimate details of one's private life which are outside the realm of legitimate public interest." (*Ibid.*) ■ Additionally, the constitutional protection of the press "provides that even a tortious invasion of privacy is exempt from liability if the publication of private facts is truthful and newsworthy." (*Ibid.*) ■ "California authority has developed a three-part test for newsworthiness: (a) The social value of the facts published; (b) the depth of the intrusion into ostensibly private affairs; and (c) the extent to which an individual voluntarily acceded to a position of public notoriety. [Citations.]" (*Id.* at p. 1461; see *Kapellas* v. *Kofman* (1969) 1 Cal.3d 20, 34-39 [81 Cal.Rptr. 360, 459 P.2d 912].) In *Wasser,* the plaintiff's newsworthiness was held established as a matter of law where the plaintiff was found to have rekindled "public interest in his criminal trial and acquittal by engaging in one public lawsuit after another" bearing some relationship to the original incident, over an 11-year period. (*Wasser* v. *San Diego Union, supra,* 191 Cal.App.3d at p. 1463.)

Howard Hughes is beyond doubt a public figure. (See, e.g., *Rosemont Enterprises, Inc.* v. *Random House, Inc.* (2d Cir. 1966) 366 F.2d 303, 305 [23 A.L.R.3d 122].) Not only public figures, but individuals closely associated with public figures, have been precluded from maintaining actions for invasion of privacy under circumstances where there is societal interest in disclosure. (*Kapellas* v. *Kofman, supra,* 1 Cal.3d 20, 37-38, fn. 25.) It is also clear that, at least during the time appellant was employed by Hughes, appellant was Hughes's "alter ego" and functioned as his personal representative to the world. ■ As such, appellant was a public figure in his own right. (*Maheu* v. *Hughes Tool Co.* (9th Cir. 1977) 569 F.2d 459, 462-463, 466, in which appellant and Summa Corporation stipulated that both appellant and Hughes were public figures.) Indeed, by bringing the above-cited action for defamation, appellant himself was instrumental in maintaining his prominent status in the public eye. While Maheu's prominence may have diminished in the intervening years, and he is no longer a close associate of a living public figure, we cannot conclude his status has reverted to that of a private figure. ■ The general rule is that " 'once a man has become a public figure, or news, he remains a matter of legitimate recall to the public mind to the end of his days.' " (*Forsher* v. *Bugliosi* (1980) 26 Cal.3d 792, 811 [163 Cal.Rptr. 628, 608 P.2d 716]; *Melvin* v. *Reid* (1931) 112 Cal.App. 285, 290 [297 P. 91].) ■ Given the social value of the facts published in Citizen Hughes, which details the political machinations of Hughes and numerous other public figures, and the extent to which appellant voluntarily assumed and retained his status as a public figure, newsworthiness was clearly established.

### B. *"Physical Intrusion"*

 Appellant alleged in his fourth cause of action that respondents were liable, because of their subsequent participation in the conspiracy, for the "physical intrusion" initiated when Woolbright and Summa Corporation broke into a locked building in 1974. This claim is meritless. Appellant himself alleged in his first complaint that the letters were taken from a building owned by Summa Corporation. (See 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, §§ 1117-1118, pp. 533-536, discussing examination of prior pleadings.) Furthermore, Code of Civil Procedure section 340, subdivision (3), provides a one-year statute of limitations for invasion of privacy claims (*Johnson* v. *Harcourt, Brace, Jovanovich, Inc.* (1974) 43 Cal.App.3d 880, 895-896 [118 Cal.Rptr. 370]) and, as with the previous causes of action, the statute cannot be tolled indefinitely by the allegation of a conspiracy.

### C. *Appropriation of Personality and Right of Publicity*

In his fifth and sixth causes of action, appellant alleged respondents "appropriated Plaintiff's name, likeness and personality by writing, publishing and commercially distributing the book entitled 'Citizen Hughes.'" Civil Code section 3344, subdivision (a), provides in part that: "Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent . . ." shall be liable to the injured party. Subdivision (d) exempts "a use of a name, voice, signature, photograph, or likeness in connection with any news, public affairs, or sports broadcast or account" from the consent requirement of subdivision (a). This statute protects the interest in identity by proscribing unauthorized use of another's name or likeness on specific products or in connection with advertising and sale of services and products. (*Eastwood* v. *Superior Court* (1983) 149 Cal.App.3d 409, 417-418 [198 Cal.Rptr. 342].) In addition, there exists a common law cause of action for appropriation of name or likeness. (*Id.* at pp. 416-417.) The appropriation of name or likeness need not give the appearance of an endorsement of the product or service in question. (*Id.* at p. 419.)

As do other torts involving invasion of the right of privacy, the tort of appropriation of name and personality, whether labeled a form of intrusion into privacy or a publicity right, invokes constitutional protections. "Publication of matters in the public interest, which rests on the right of the public to know, and the freedom of the press to tell it, cannot ordinarily be actionable. [Citations.]" (*Eastwood* v. *Superior Court, supra,* 149 Cal.App.3d 409,

421.) In the *Eastwood* case, where the entire article published by the Enquirer was alleged to be false, the court concluded Eastwood failed to state a cause of action under either the common law or statutory version of appropriation (Civ. Code, § 3344) because he failed to allege the article was published with knowledge of or in reckless disregard of its falsity. (*Id.* at p. 426.) Had the article not been alleged to be entirely false, it would have come within the exemption set forth in Civil Code section 3344, subdivision (d) for news accounts. (*Id.* at p. 425.)

In the present case, appellant has failed to incorporate allegations of knowing or reckless falsity into these causes of action, although he has been afforded numerous opportunities to do so. Furthermore, he does not allege that all or even the majority of the material published was false. Since appellant does not dispute the truthfulness of the matters published, the material is protected as a news account under section 3344, subdivision (d). Under these circumstances, we conclude appellant has failed to state any valid claims for invasion of privacy and has failed to offer on appeal any argument as to the validity of his claim pertaining to the right of publicity.

## III

### Whether the Seventh Cause of Action States a Valid Claim for Intentional Interference With Prospective Economic Advantage

Lastly, appellant contends the trial court erred in sustaining the demurrer to the seventh cause of action on the grounds respondents' conduct involved the protected publication of newsworthy events and was privileged by the notion of free competition. The elements of the tort of intentional interference with prospective economic advantage are as follows: "(1) [T]he existence of a prospective business relationship advantageous to plaintiff, (2) defendants' knowledge of the existence of the relationship, (3) defendants' intentional conduct designed to disrupt the relationship, (4) actual causation, and (5) damages to plaintiff proximately caused by defendants' conduct. [Citations.]" (*Institute of Veterinary Pathology, Inc.* v. *California Health Laboratories, Inc.* (1981) 116 Cal.App.3d 111, 126 [172 Cal.Rptr. 74].)

In enacting the Copyright Act of 1976, Congress intended that state law claims for interference with contract or prospective economic advantage would be preempted where based on unauthorized use or copying of copyrightable property. "[T]o the extent that the unfair competition concept known as 'interference with contractual relations' is merely the equivalent of copyright protection, it would be preempted." (Sen. No. 473,

H.R. No. 1476, 94th Cong., 2d Sess. (1976), reprinted in U.S. Code Cong. & Admin. News (1976) at p. 5748; see *Harper & Row Publishers, Inc.* v. *Nation Enterprises, supra,* 723 F.2d 195, 201; *Motown Record Corp.* v. *George A. Hormel & Co.* (C.D.Cal. 1987) 657 F.Supp. 1236, 1240.)

"Insofar as unauthorized reproduction, distribution, performance or display causes the plaintiff to lose the benefits which would flow from an actual or prospective contract whereby plaintiff would authorize any such acts, the rights created by the tort of contract interference [citation] would not appear to differ qualitatively from rights under copyright. Copyright also contemplates loss of actual or prospective contract benefits [citations] by reason of such unauthorized acts. Preemption in this context would, then, appear to be justified. The fact that the tort, unlike copyright infringement, requires awareness of the conflicting contract, and an intentional interference therewith [citation] merely means that the state created right is narrower than its copyright counterpart, but does not preclude preemption. [Citation.]" (1 Nimmer on Copyright, *supra,* p. 1-14.1, fn. 46.)

In this case, appellant's claim based on interference with prospective economic advantage is predicated upon respondents' having been first to publish, a claim which clearly is tied to appellant's right to reproduce the letters and derive the economic benefits from their intangible value. Appellant's claim is therefore preempted.

## DISPOSITION

The order of dismissal is affirmed.

McClosky, Acting P. J., and Rothman, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.