Filed 7/24/24  Sky Lift Aeronautics v. Lockheed Martin CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| SKY LIFT AERONAUTICS, LLC, et al., | B322705 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. SC128899) |
| v. | |
| LOCKHEED MARTIN CORPORATION et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Young, Judge.  Affirmed.

Tarpey Wix, Daniel W. Tarpey, David Wix; Bendel Law Group and Jason R. Bendel for Plaintiffs and Appellants.

Crowell & Moring, Valerie M. Goo, Andrew Holmer, Uri Niv and Kenneth R. Taketa for Defendants and Respondents.

Plaintiffs and appellants Sky Lift Aeronautics, LLC (Sky Lift), and Millennium Airship, Inc. (Millennium) (collectively plaintiffs), appeal from the summary judgment entered in favor of defendants and respondents Lockheed Martin Corporation (Lockheed), Robert Binns, and Hybrid Enterprises, LLC (Hybrid) (collectively defendants) after the trial court ruled that plaintiffs' claims for violation of the California Uniform Trade Secrets Act (Civ. Code, § 3426) (CUTSA), breach of contract, and breach of fiduciary duty were time-barred. Plaintiffs contend triable issues of fact exist as to when the applicable limitations periods began to run. Plaintiffs further contend the trial court erred by granting, without leave to amend, defendants' demurrers to certain tort claims asserted in the second amended complaint.

Plaintiffs presented no evidence to controvert undisputed admissions that they suspected defendants of misappropriating trade secrets no later than January 3, 2015, and that they suspected Lockheed of breaching contractual obligations and Binns of breaching fiduciary duties no later than January 2014, thereby triggering the applicable statutes of limitation during those time periods. They accordingly raise no triable issues as to when the applicable limitations periods began to run and whether their claims are time-barred. Plaintiffs fail to sustain their burden of showing a reasonable probability of amending the defective tort claims they now seek to reassert. We therefore affirm the judgment.

## FACTUAL BACKGROUND

### The parties

Millennium and Sky Lift are corporate entities owned and controlled by Gil Costin and Michael Smith. Costin is

2

Millennium's chief executive officer (CEO) and testified in deposition as Millennium's person most knowledgeable. Smith is Sky Lift's managing member and testified in deposition as Sky Lift's person most knowledgeable. Both Millennium and Sky Lift were formed for the purpose of building, operating, marketing, and selling hybrid airships. A hybrid airship is a prototype blimp-like vehicle intended to carry large cargo loads over great distances with take-off and landing capabilities that permit access to remote and undeveloped areas. Millennium holds a patent for an Integrated Thrust and Maneuvering Management System (ITAMMS).

Lockheed is an aerospace company. Hybrid is a limited liability company formed by Binns and others in July 2014.

**Proprietary information agreements (PIA)**

*2004 PIA*

In 2004, Lockheed considered a proposal by Millennium to incorporate the ITAMMS technology into a bid by Lockheed to the United States government for a military hybrid airship. Lockheed and Millennium executed a PIA on May 18, 2004 (the 2004 PIA), which expired on January 1, 2008.[1] Lockheed ultimately concluded that ITAMMS was not well suited for the needs of the government proposal and did not use ITAMMS in its government bid or in any of Lockheed's hybrid airship designs.

In addition to possible military applications for a hybrid airship, Lockheed explored options for a commercial hybrid airship. In 2005, Lockheed contracted with Millennium to conduct a market study for a potential commercial hybrid airship

---

[1] The 2004 PIA is not the subject of any claims against Lockheed.

3

and paid Millennium $40,000 for the study. Lockheed found Millennium's market study to be unhelpful, providing no new insights or information Lockheed did not already know.

In October 2010, Millennium contacted Lockheed in an attempt to obtain a contract for the exclusive right to sell and market a Lockheed commercial hybrid airship. Millennium did not obtain the exclusive contract rights it sought, and in 2010 Lockheed signed an exclusive contract with Aviation Capital Enterprises (ACE) to bring Lockheed hybrid airships to the commercial market. Lockheed's exclusive relationship with ACE ended in late 2012.

### 2012 PIA

Lockheed and Millennium signed a second PIA in May 2012 (the 2012 PIA). The 2012 PIA specified the following confidential information Millennium sought to protect: "Proprietary Information relating to Integrated Thrust and Maneuvering Management System (ITAMMS), ThrustWing Technology, Airship Catamaran Hull Technology," and "registered names of Millennium Airship."

### 2013 PIA

In March 2013, Lockheed began negotiations with Sky Freighter International (SFI),[2] another company owned or controlled in part by Costin and Smith, over the terms of a potential exclusive contract to sell commercial hybrid aircrafts. The contract was never finalized, and Lockheed never entered into any exclusivity arrangement with SFI.

Costin and Smith formed Sky Lift in August 2013 for the purpose of continuing negotiations with Lockheed for an

---

[2]     SFI is not a party to this action.

4

exclusive arrangement to sell or lease commercial hybrid airships.  Sky Lift and Lockheed executed a PIA, effective September 19, 2013 (the 2013 PIA), that specified the following confidential information Sky Lift sought to protect:  "Proprietary Information relating to: business plans, project plans, financing structures, and all personnel and parties involved with [Sky Lift]."  On September 20, 2013, Sky Lift presented to Lockheed a business plan "to enter into a long-term exclusive contract" with Lockheed for "exclusive right to sell or lease [the] Hybrid Aircraft in the worldwide commercial market."

**Sky Lift's relationship with Binns**

In August 2013, Smith retained Korn Ferry, an executive recruiting company, to search for a CEO for Sky Lift.  Korn Ferry identified Binns as a potential candidate.  Smith interviewed Binns at Korn Ferry's offices in Los Angeles on October 17, 2013.

Shortly after interviewing Binns in Los Angeles, Smith took Binns to meet with Lockheed representatives at Lockheed's Palmdale facility.  Smith testified in deposition that during that initial meeting in Palmdale, Binns spoke privately with Craig Johnston, Lockheed's director of business strategy and development.  Smith testified that Binns was "elusive" and "vague about the conversation" with Johnston.  Smith further testified that he "first start[ed] having suspicions of Mr. Binns' intentions to fulfill his role at Sky Lift" at that "very first meeting with Lockheed."  Smith's suspicions about Binns "only increased" into January 2014.

Smith and Binns signed a nonbinding employment term sheet in November 2013 for Binns to serve as a paid consultant for Sky Lift in its negotiations with Lockheed.  Sky Lift and

Binns also signed a confidentiality and nondisclosure agreement, effective October 17, 2013.

**Lockheed rejects Sky Lift's proposals and Binns resigns**

Between November 2013 and January 2014, Sky Lift submitted multiple financing proposals to Lockheed to build and sell hybrid airships. Lockheed rejected all of these proposals and on January 10, 2014, advised Sky Lift in writing that Lockheed could "not see [Sky Lift's] path to financing as ever closing with [Lockheed]." Costin admitted that based on Lockheed's January 2014 rejection of Sky Lift's proposals, he believed Sky Lift "was out of the picture" and "the deal with Sky Lift was dead." Costin further admitted in deposition that he "wanted to sue" Lockheed in January 2014.

On January 22, 2014, Smith and Costin received a resignation letter from Binns via e-mail. Binns stated in the letter that he "never entered into any" "non-solicitation covenants" with Sky Lift and could not be bound by the nondisclosure agreement. Costin testified in deposition regarding Binns's January 22, 2014 resignation letter that he suspected Binns of trying to work with Lockheed directly. Smith testified in deposition that upon receiving Binns' January 22, 2014 resignation letter he felt "there was collusion taking place" and that Binns was using Sky Lift's confidential information to Binns' own advantage with Lockheed. Smith's suspicions prompted him to send a "cease-and-desist" letter to Binns.

Between March and September 2014, Lockheed repeatedly told Smith and Costin that no agreement existed between Sky Lift and Lockheed and that the entire relationship between the two companies was over.

**Hybrid and its exclusive agreement with Lockheed**

In July 2014, Binns and other individuals formed Hybrid. On December 15, 2014, Hybrid and Lockheed signed an agreement to have Hybrid serve as the exclusive reseller of Lockheed commercial hybrid airships. Plaintiffs learned of Hybrid's exclusive reseller status on December 15, 2014, in an e-mail communication from Lockheed vice president Jack O'Banion. Costin testified he believed that in December 2014 plaintiffs had been "sabotaged" by Binns and Lockheed and that Lockheed had "kicked [plaintiffs] to the curb" so that Lockheed, Binns, and Hybrid could make "hundreds of millions" "potentially using Millennium and Sky Lift's confidential information."

On January 2, 2015, Costin received an e-mail from O'Banion stating: "I do not see another opportunity for your company in [Lockheed's] hybrid airship initiative at this time outside of a possible collaboration with Hybrid Enterprises." In response to O'Banion's e-mail, Smith wrote to Costin stating: "I'd be curious to hear what Binns has to say but at this time I can only see legal action going forward." On January 3, 2015, Costin e-mailed Smith his belief that Lockheed and Hybrid were attempting to "to capitalize on our hard work by capturing the lion's share of the money on the sales while doing nothing to earn it." Costin testified in deposition that at the time he wrote the January 3, 2015 e-mail to Smith, he was concerned that Lockheed and Hybrid "were going to use Sky Lift and Millennium's confidential information." Costin further testified that by January 3, 2015, he believed "[i]t was a lie on the part of [Lockheed] and . . . Binns" that Sky Lift or Millennium would be involved in Lockheed's hybrid airship program.

Lockheed's exclusive reseller agreement with Hybrid expired in April 2018. Lockheed never sold or leased a hybrid airship. Neither Lockheed nor Hybrid and Binns has ever sold a hybrid airship to any customer identified by plaintiffs on their trade secret designation.

## PROCEDURAL HISTORY
### Commencement of action and the pleadings

Sky Lift commenced this action on February 26, 2018. Sky Lift filed a first amended complaint on June 14, 2018, adding Millennium as a plaintiff and asserting claims for fraud, violation of the unfair competition law (UCL), civil conspiracy, violation of the CUTSA, injunctive relief, breach of contract, breach of fiduciary duty, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and interference with prospective economic advantage.

Defendants demurred to the first amended complaint on multiple grounds. The trial court sustained the demurrers, with leave to amend, to the fraud, civil conspiracy, UCL, and interference with prospective economic advantage claims, ruling that each of those claims was preempted by the CUTSA.

Plaintiffs filed a second amended complaint reasserting their claims for fraud, violation of the UCL, civil conspiracy, violation of the CUTSA, breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, and interference with prospective economic advantage. Defendants again demurred, arguing that the UCL and tort claims were preempted by the CUTSA and were barred by the statute of limitations. On June 28, 2019, the trial court sustained the demurrers in part, ruling that the fraud, UCL, conspiracy, and

8

interference with prospective economic advantage claims were preempted by the CUTSA. As to those claims, the trial court denied leave to amend, concluding that even without the CUTSA claim, each of the preempted claims "would still revolve around the same nucleus of trade secret facts."

Plaintiffs filed a motion to reconsider the trial court's June 28, 2019 demurrer ruling and a proposed third amended complaint reasserting the preempted tort claims. They subsequently stipulated to withdraw both the motion to reconsider and the proposed third amended complaint and filed a fourth amended complaint, the operative pleading in this action.

The fourth amended complaint alleges causes of action for (1) violation of the CUTSA (against all defendants), (2) breach of PIA (by Sky Lift against Lockheed), (3) breach of fiduciary duty (by Sky Lift against Binns), (4) breach of the implied covenant of good faith and fair dealing (by Sky Lift against Lockheed), (5) promissory estoppel (by Sky Lift and Millennium against Lockheed), and (6) breach of PIA (by Millennium against Lockheed).

**Summary judgment**

Defendants filed motions for summary judgment, arguing, as relevant here, that plaintiffs' claims were time-barred. The trial court granted the motions, ruling that plaintiffs' uncontroverted admissions established that their claims were barred by the applicable statutes of limitation and that plaintiffs failed to raise any triable issues of material fact in that regard.

Judgment was entered in defendants' favor, and this appeal followed.

**DISCUSSION**

## I. Standard of review

Summary judgment is granted when a moving party establishes the right to entry of judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment bears the initial burden of proving there is no merit to a cause of action by showing that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1037.) Once the defendant has made such a showing, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or as to a defense to the cause of action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.) If the plaintiff does not make such a showing, summary judgment in favor of the defendant is appropriate. In order to obtain a summary judgment, "all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action . . . . [T]he defendant need not himself conclusively negate any such element . . . ." (*Id*. at p. 853, fn. omitted.) We review the trial court's grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348; see Code Civ. Proc., § 437c, subd. (c).)

## II. The discovery rule and commencement of limitations period

California law sets forth two tests for triggering the applicable statute of limitations: "(1) a subjective test requiring

10

actual suspicion by the plaintiff that the injury was caused by wrongdoing; and (2) an objective test requiring a showing that a reasonable person would have suspected the injury was caused by wrongdoing. [Citation.] The first to occur under these two tests begins the limitations period." (*Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1391 (*Kitzig*).)

## III. Summary judgment

Summary judgment was properly granted. The undisputed evidence shows that plaintiffs' causes of action for violation of the CUTSA, breach of contract, and breach of fiduciary duty are time-barred, and plaintiffs fail to raise any triable issue as to when the applicable limitations periods began to run.

### A. *Plaintiffs' CUTSA claims are barred by the three-year statute of limitations*

An action for misappropriation under the CUTSA "must be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." (Civ. Code, § 3426.6.) For statute of limitations purposes, a continuing misappropriation is considered a single claim. (*Ibid.*; *Cadence Design Systems, Inc. v. Avant! Corp.* (2002) 29 Cal.4th 215, 223 (*Cadence*).) "[A] claim for misappropriation of a trade secret arises for a given plaintiff against a given defendant only once, at the time of the initial misappropriation, subject to the discovery rule provided in [Civil Code] section 3426.6." (*Cadence*, at p. 223.) "[I]t is the first discovered (or discoverable) misappropriation of a trade secret which commences the limitation period." (*Glue-Fold, Inc. v. Slautterback Corp.* (2000) 82 Cal.App.4th 1018, 1026.)

The uncontroverted evidence shows that plaintiffs actually suspected defendants of misappropriating trade secrets as early

11

as 2014 and no later than January 2015.  Because plaintiffs did not commence this action until February 26, 2018, more than three years after discovering the alleged misappropriation, their claims under the CUTSA against all defendants are time-barred. (Civ. Code, § 3426.6; *Kitzig, supra*, 81 Cal.App.4th at p. 1391.)

Costin and Smith both admitted in deposition that they suspected misappropriation by all three defendants as early as January 2014 and no later than January 2015.  Costin testified that in January 2014 he believed Binns was a "turncoat" and "suspected" that "Binns was going to try and go work with Lockheed . . . directly."  Smith similarly testified that in January 2014 he "felt there was collusion taking place" and that Binns "might try and take Sky Lift's confidential information and work with Lockheed . . . directly."  Costin admitted that in December 2014 he believed he had been "sabotaged" by Lockheed and Binns and that Binns, Hybrid, and Lockheed were "potentially using Millennium and Sky Lift's confidential information" to "make millions" "without Millennium or Sky Lift."  Costin further admitted that in January 2015 he was concerned that Hybrid and Lockheed "were going to use Sky Lift and Millennium's confidential information."  Plaintiffs presented no evidence that raises a triable issue as to when they first suspected defendants of misappropriating trade secrets.

We reject plaintiffs' claims that admissions made during their depositions are taken "out of context" and do not establish that they suspected collusion among all the defendants. Plaintiffs cite, for example, Smith's testimony that upon receiving Binns's January 2014 resignation letter he suspected collusion only between Binns and Korn Ferry.  That testimony is contradicted, however, by Smith's admission that in January

12

2014 he suspected Binns of conspiring with Lockheed and Korn Ferry to take advantage of plaintiffs.  We are not persuaded that Costin's admission that he "wanted to sue" Lockheed in January 2014 merely expressed his frustration at Lockheed's rejection of Sky Lift's financing proposals and is not evidence that he suspected Lockheed of breaching contractual obligations.  There is ample unambiguous and uncontradicted evidence that Costin actually suspected defendants of conspiring to use plaintiffs' confidential information and that this suspicion fueled his desire to sue Lockheed in January 2014.

Plaintiffs' contention that they have separate claims against each defendant, with separate and distinct limitations periods, is unavailing because their misappropriation claims against all three defendants are based on the same facts—alleged "collusion" among defendants to misappropriate plaintiffs' confidential information.  The three-year statutory period therefore commenced at the same time for all three defendants— as early as 2014 and no later than January 2015.  (*Cadence, supra*, 29 Cal.4th at p. 223 [misappropriation claim against a given defendant arises only once, at time of initial misappropriation].)

Plaintiffs claim that they had no reason to suspect misappropriation in January 2015 because Lockheed continued to work with them thereafter is unsupported by the record.  The undisputed evidence shows that Lockheed informed plaintiffs on January 2, 2015, that it saw no opportunity for them to work on the hybrid airship program apart from a possible collaboration with Hybrid.  Plaintiffs admit they never attempted to collaborate with Hybrid.  Costin testified that by January 3, 2015, he believed "[i]t was a lie on the part of [Lockheed] and

13

Binns" that Sky Lift or Millennium would be involved in Lockheed's hybrid airship program.

Plaintiffs contend they had no reason to suspect any misappropriation that caused them *injury* until Lockheed publicly announced its exclusive reseller agreement with Hybrid in June 2016. They cite no authority, however, to support distinguishing between misappropriation and injury for purposes of the statute of limitations. Under California law, the statute of limitations begins to run ""when, under the substantive law, the wrongful act is done."" (*Cypress Semiconductor Corp. v. Superior Court* (2008) 163 Cal.App.4th 575, 585.) Under the CUTSA, the wrongful act is the misappropriation of trade secrets. (*Ibid.*) Plaintiffs' claim that they did not suspect they had been injured by the alleged misappropriation until June 2016 is also contradicted by their own admissions. Costin testified in deposition that he believed in December 2014 that Binns and Lockheed had "sabotaged" plaintiffs so that Lockheed, Binns, and Hybrid could make "hundreds of millions" by "using Millennium and Sky Lift's confidential information." In January 2015, Costin expressed his belief that Lockheed and Hybrid were attempting to "to capitalize on our hard work by capturing the lion's share of the money on the sales while doing nothing to earn it."

Plaintiffs' argument that they had no objective "reason to suspect" misappropriation is also unavailing given their admissions that they actually suspected defendants of misappropriating trade secrets as early as 2014 and no later than January 2015. Under California law, Costin's and Smith's subjective belief that defendants were misappropriating trade secrets triggered the three-year statute of limitations under the CUTSA. (*Kitzig, supra*, 81 Cal.App.4th at p. 1391.) The trial

14

court did not err by concluding that plaintiffs' claims under the CUTSA are time-barred.

**B.** ***Plaintiffs' contract claims are barred by the four-year statute of limitations***

Plaintiffs do not dispute that their causes of action against Lockheed for breach of the 2012 and 2013 PIA's and for breach of the implied covenant of good faith and fair dealing are subject to the four-year statute of limitations applicable to claims arising under a written contract. (Code Civ. Proc., § 337, subd. (a); *Krieger v. Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205, 220.)

Lockheed met its initial burden of showing that plaintiffs discovered their breach of contract claims as early as 2013 and no later than January 2014, more than four years before they commenced this action. The undisputed evidence shows that Smith suspected Lockheed and Binns of conspiring to use plaintiffs' confidential information as early as October 2013. Smith's suspicions "only increased" through the remainder of 2013 and into January 2014. Smith admitted that upon receiving Binns's resignation letter in January 2014, he "felt there was collusion taking place" to use Sky Lift's confidential information, prompting him to send a cease-and-desist letter to Binns. Costin testified that in January 2014, he suspected Binns had become a "turncoat" by trying to work directly with Lockheed. Costin further testified that when Lockheed informed him in January 2014 that a deal with Sky Lift would not go forward, he "wanted to sue" Lockheed.

Plaintiffs fail to raise any triable issue as to when the applicable four-year limitations period began to run. Their claim that suspicion of Binns in January 2014 is not evidence that they

15

suspected Lockheed of breaching the 2012 and 2013 PIA's is contradicted by allegations in their complaint that Lockheed and Binns conspired to misappropriate confidential information, by Smith's admission that he believed Lockheed and Binns were colluding in January 2014 to use Sky Lift's confidential information, and by Costin's admission that he wanted to sue Lockheed in January 2014. As the trial court noted in its written ruling, plaintiffs' allegations of conspiracy among the defendants are the basis for all of their claims, including the breach of contract claims.

Plaintiffs' arguments that Sky Lift continued to attempt to work with Lockheed on the hybrid airship project during the spring and summer of 2014, and that plaintiffs did not learn of Hybrid's exclusive reseller agreement with Lockheed until December 2014 does not place into dispute any of the material facts regarding plaintiffs' suspicions in January 2014 of Lockheed's alleged wrongdoing. It is these suspicions of wrongdoing that triggered the statute of limitations. (*Kitzig, supra*, 81 Cal.App.4th at p. 1391.)

The trial court did not err by summarily adjudicating plaintiffs' contract claims.

### C. *Plaintiffs' breach of fiduciary duty claim is barred under either a three-year or four-year statute of limitations*

The trial court ruled that the three-year limitations period prescribed by Code of Civil Procedure section 338, subdivision (d)[3] applies to plaintiffs' breach of fiduciary duty cause of action

---

[3]    Code of Civil Procedure section 338, subdivision (d) imposes a three-year statute of limitations on "[a]n action for relief on the

16

against Binns because the gravamen of that cause of action is alleged acts of fraud. Plaintiffs contend the four-year limitations period set forth in Code of Civil Procedure section 343[4] applies because their breach of fiduciary duty claim is based on Binns's failure to perform his fiduciary obligations as Sky Lift's CEO and on "traditional fiduciary duties of loyalty" owed by an agent or employee to his employer.

We agree with the trial court's determination that the three-year limitations period set forth in Code of Civil Procedure section 338, subdivision (d) applies. A review of the fourth amended complaint confirms that the gravamen of plaintiffs' breach of fiduciary duty cause of action is fraud, and not Binns's failure to perform his duties as Sky Lift's CEO. (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 347 [courts must focus on the gravamen of the claim when determining which limitations period applies].) Plaintiffs allege in their fourth amended complaint: "[U]nbeknownst to Millennium and Sky Lift, Binns was hand selected by Lockheed because it was Lockheed's plan at the time that Binns would only temporarily serve as a 'straw man' CEO of Sky Lift until Lockheed's agreement with Sky Lift expired and then Binns would become CEO of the Lockheed-funded new entity (which ultimately became Hybrid Enterprises). [P]lacing Binns as a temporary CEO of Sky Lift was also all in furtherance of continuing to lead

---

ground of fraud or mistake. The cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

[4] Code of Civil Procedure section 343 states: "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

17

Plaintiffs to believe that their involvement in the project was real when the true intent was to prevent Plaintiffs from pursuing opportunities with Lockheed's competitors." Plaintiffs further allege that after the initial October 2013 meeting among Lockheed, Smith, and Binns, "there were a series of emails between Lockheed and Binns, the full content of which was intentionally kept from Sky Lift's founders, Smith and Costin"; Binns became "disengaged" from Sky Lift and "unconcerned" about Lockheed's refusal to accept Sky Lift's proposals, and "began to have several calls with Lockheed without the knowledge of Smith and Costin"; and immediately after resigning from Sky Lift, Binns, at Lockheed's direction, started Hybrid and began discussions with Lockheed for Hybrid to become the exclusive worldwide seller of Lockheed's hybrid airships and for Lockheed to abandon all negotiations with Sky Lift. The breach of fiduciary duty claim against Binns is premised on an alleged conspiracy with Lockheed to mislead plaintiffs and to install Hybrid as Lockheed's exclusive seller of hybrid airships.

Whether a three-year or four-year limitations period applies, however, is not determinative, as plaintiffs' breach of fiduciary duty claim is untimely under either the three-year or four-year statute of limitations. The undisputed evidence shows that plaintiffs actually suspected malfeasance by Binns no later than January 2014. Smith testified that he had "suspicions" about Binns's interactions with Lockheed in October 2013, and that those suspicions "only increased" throughout 2013 and into January 2014. Costin testified that when Binns informed plaintiffs in January 2014 that he had no continuing obligations under the Sky Lift confidentiality agreement, Costin suspected Binns had become a "turncoat" and was going to work with

18

Lockheed directly. Smith admitted that upon receiving Binns's resignation letter in January 2014, he believed Binns and Lockheed were colluding to use Sky Lift's confidential information.

Plaintiffs cite Binns's assurances in his resignation letter that he did not plan to share any of Sky Lift's confidential information with Lockheed or other third parties as evidence that they had no reason to believe Binns had breached fiduciary duties in January 2014. They argue that a jury could reasonably conclude plaintiffs did not discover Binns's breach of duty until February 2014, when Binns submitted a detailed business plan to Lockheed that purportedly incorporated Sky Lift's confidential information, or until June 2015, when Lockheed publicly announced its exclusive reseller arrangement with Hybrid. The evidence cited by plaintiffs neither negates nor controverts their admissions that by January 2014 they actually suspected Binns of providing Sky Lift's proprietary information to Lockheed for his own benefit. Plaintiffs' actual suspicion of Binns triggered the applicable limitations period. (*Kitzig, supra*, 81 Cal.App.4th at p. 1391.) They raise no triable issue as to when the applicable statutory period began to run.

Because plaintiffs did not commence this action until February 2018, more than four years after discovering Binns's alleged breach of his duties, their breach of fiduciary duty claim is barred under either the three-year or four-year statute of limitations. The trial court accordingly did not err by summarily adjudicating that claim.

## IV. Demurrer ruling

### A. *No forfeiture*

Defendants incorrectly contend plaintiffs forfeited any challenge to the June 28, 2019 ruling sustaining, without leave to amend, demurrers to plaintiffs' claims for fraud, civil conspiracy, violation of the UCL, and interference with prospective economic advantage by withdrawing their motion to reconsider the demurrer ruling and by filing a fourth amended complaint that omitted those claims. "The rule that a choice to amend waives any error can reasonably be applied only on a cause-of-action-by-cause-of-action basis. If a plaintiff chooses not to amend one cause of action but files an amended complaint containing the remaining causes of action or amended versions of the remaining causes of action, no waiver occurs and the plaintiff may challenge the intermediate ruling on the demurrer on an appeal from a subsequent judgment. . . . [¶] Code of Civil Procedure section 472c confirms this analysis. 'The following orders shall be deemed open on appeal where an amended pleading is filed after the court's order: [¶] (1) An order sustaining a demurrer to a cause of action within a complaint or cross-complaint where the order did not sustain the demurrer as to the entire complaint or cross-complaint.' (Code Civ. Proc., § 472c, subd. (b).)" (*County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 312 (*Santa Clara*).)

Here, the trial court's June 28, 2019 order sustaining, without leave to amend, defendants' demurrers to the UCL, fraud, civil conspiracy, and interference with prospective economic advantage causes of action but did not sustain the demurrer as to the entire second amended complaint. The June 28, 2019 order is therefore appealable notwithstanding

20

plaintiffs' subsequent filing of an amended pleading omitting those causes of action. (Code Civ. Proc., § 472c, subd. (b); *Santa Clara, supra*, 137 Cal.App.4th at p. 312.) We therefore consider the merits of plaintiffs' challenge to the trial court's demurrer ruling.

### B. *Standard of review*

The only aspect of the June 28, 2019 demurrer ruling challenged by plaintiffs is the trial court's denial of leave to amend, which we review under the abuse of discretion standard. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; *Roe v. Hesperia Unified School Dist.* (2022) 85 Cal.App.5th 13, 23.) An appellant challenging an order sustaining a demurrer without leave to amend bears the burden of identifying specific facts showing the complaint can be amended to state a viable cause of action. (*Roe*, at p. 23.)

### C. *No abuse of discretion*

Plaintiffs fail to sustain their burden of presenting specific facts that would cure the defect identified by the trial court—that their tort claims are preempted by the CUTSA. Plaintiffs' assertion that they could "delete any references to the trade secrets covered by the CUTSA cause of action" does not meet their burden. Their claim that they can amend the complaint "to make clear that the nucleus of the tort claims were the deception-related, not trade secret, facts" is unsupported by any specific facts plaintiffs would allege in place of the "trade secret facts."

The tort claims plaintiffs seek to reassert are based on the same constellation of facts underlying their misappropriation, contract, and fraud claims. The reasserted tort claims are therefore also barred by the applicable statutes of limitations. (See *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967

21

[judgment must be affirmed if any one of several grounds of a demurrer is well taken].)  Plaintiffs' UCL cause of action is subject to a four-year statute of limitations (Bus. & Prof. Code, § 17208), the fraud and civil conspiracy limitation period is three years (Code Civ. Proc., § 338, subd. (d); *Maheu v. CBS, Inc.* (1998) 201 Cal.App.3d 662, 673 [statute of limitations for civil conspiracy is determined by the underlying tort]), and a two-year limitations period governs the interference with prospective economic advantage claim.  (Code Civ. Proc., § 339, subd. (1).)  The longest of these limitation periods is four years.  Undisputed evidence presented in the summary judgment proceedings show that plaintiffs actually suspected defendants of malfeasance (independent of plaintiffs' CUTSA claims) in January 2014.  Because plaintiffs did not commence this action until February 2018, more than four years after first discovering the tort claims they now seek to reassert, those claims are barred by the applicable statutes of limitations.

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.

_____
CHAVEZ, J.

We concur:


_____     _____
ASHMANN-GERST, Acting P. J.     HOFFSTADT, J.